**FLORENTINE ART STUDIO, INC., a California Corporation, Plaintiff,**

v.

**VEDET K. CORPORATION d/b/a Designer's Supply Co. a/k/a Designer's Supply; Vedet Kordoglu; and Gonul Kordoglu, Defendants.**

No. CV 93–6425–ABC(EEx).

United States District Court, C.D. California.

Jan. 4, 1995.

Robert E. Canny, Law Offices of Robert E. Canny, Santa Monica, CA, for plaintiff.

Quinn Emanuel Urquhart and Oliver David W. Quinto, Los Angeles, CA, for defendants.

## MEMORANDUM AND ORDER RE: FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER TRIAL

COLLINS, District Judge.

### Issues Tried

The matter was tried before the Honorable Audrey B. Collins from October 25 through 29, 1994. This was an action for copyright infringement, violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and violation of *California Business and Professions Code* §§ 17200, *et seq.*

### Findings of Fact

1. Plaintiff Florentine Art Studio (plaintiff Florentine Art Studio and its owner and

president, Luigi Arrighi, are sometimes collectively referred to as "plaintiff") has been in business since 1966. It manufactures unfinished plaster (commonly called hydrocal) design ware and statues. Plaintiff has approximately 4,000 separate items in its product line. Plaintiff has registered between 250 and 400 copyrights. The remainder of the items in plaintiff's line are unregistered, and as to most plaintiff does not claim copyright protection. Plaintiff's gross income is approximately $1.5 million dollars per year. There was no evidence presented by plaintiff as to the breakdown of sales of the allegedly infringing items for any of the years in question.

2. Defendants Vedat K. Corporation and its owner and president, Vedat Kurdoglu[1] (collectively, "defendants") also produce a line of approximately 400 hydrocal statues. Defendants' statues are finished statues, unlike those of plaintiff which are unfinished. Forty percent (49%) of defendants' products are, according to the testimony of defendant Vedat Kurdoglu ("Kurdoglu"), in the public domain, many as classical items. Mr. Kurdoglu buys others from free-lance designers. Approximately fifteen percent (15%) are original designs, which defendants make from scratch.

3. The Court finds that sales and profits from all the works at issue accounted for only a trivial portion of defendants' sales. As reflected in Exhibit 1010, defendants' sales were $1,350,195.77 in 1991; $1,904,975.05 in 1992; and $2,596,860.72 in 1993. However, as reflected in Exhibit 1, all sales from all allegedly infringing items in 1991 were only $1,687, of which 3.93 percent was net profit. Defendants' sales of the allegedly infringing items in 1992 amounted to $3,600. Defendant's business, however, lost $42,222 that year and operated at a net loss. Sales from allegedly infringing items in 1993 were $16,637.46, of which less than one percent (1%) was net profit. Those sales figures do not include the statute "Three Dolphins on Base". However, the total gross sales of the Three Dolphins on Base during those years

were $2,831.00, as reflected in Exhibit 1026, p. 120.

4. Having begun business in about 1986, defendant Vedat Kurdoglu incorporated in March of 1991. The defendant is the sole officer and director of defendant Vedat K. Corporation dba Designer's Supply Co. aka Designer's Supply. "Designer's Supply" is a fictitious name that is not incorporated.

5. Defendant Gonul Kurdoglu is not and never has been a shareholder, officer, or director of the defendant corporation and has not copied any of the plaintiff's works. The extent of her involvement in defendants' business is that she sometimes wrote checks or took deposits to the bank in her husband's absence. These facts concerning Gonul Kurdoglu's involvement were known to plaintiff before trial.

6. Plaintiff brought this action on October 23, 1993, to recover for the alleged infringement by the defendants of nine works consisting of the Large Swan (Exhibit 16), Standing Eagle (Exhibit 15), Modern Humanistic Bust (Exhibit 17), Cactus in Pot (Exhibit 13), Three Dolphins on Base (Exhibit 10), Tall Cactus Lamp (Exhibit 9), Squaw Pouring (Exhibit 12), Modern Swan (Exhibit 11), and Indian with Eagle (Exhibit 14). Plaintiff seized the allegedly infringing items in defendants' inventory and defendants' invoices, general ledger and other sales records early in November, 1993.

7. On November 11, 1993, all defendants wrote to plaintiff to propose a stipulation concerning the temporary restraining order entered earlier, discuss discovery, and explore the possibility of settlement. Defendants offered to discontinue selling seven of the nine items as to which plaintiff had claimed copyright protection and offered to stipulate to the entry in judgment of a permanent injunction prohibiting them from making or selling all nine items. Defendants also discussed many of the defenses which they presented at trial. They told plaintiff that defendants had never manufactured or sold the Standing Eagle or the Modern Humanistic Bust. Defendants pointed out reg-

---

1. Vedat K. Corporation and Vedat Kurdoglu are incorrectly spelled in the caption as "Vedet K. Corporation" and "Vedet Kordoglu".

istration issues which could preclude any award of statutory damages or attorney's fees with respect to several of the items in issue.

■ 8. To establish copyright infringement, plaintiff is required to prove that; (1) it owned the works in question; (2) defendants had access to the works; and (3) defendants' works are substantially similar or identical to plaintiffs' works.

9. Many hydrocal statue designs are not copyrighted. These include reproductions of classical works, as well as others. The non-copyrighted statues are in the public domain. These are known as "open stock" and are freely copied by all manufacturers.

10. Although both plaintiff and defendants claim copyright protection in ten to fifteen percent (10–15%) of their works, there are many statues available in the marketplace which are similar or identical to their copyrighted works. That is because even when statues have been published with copyright notice and properly registered, they are often later copied without permission and commonly appear on the market in the United States and Mexico without any notice of copyright. Therefore, the opportunity for innocent infringement abounds because an innocent purchaser may buy and reproduce such statues without being aware they are copyrighted works.

11. Both plaintiff and defendant Kurdoglu testified that they tried not to copy copyrighted works. Plaintiff's president, Mr. Arrighi, testified that plaintiff is very careful and, if it has ever copied, it was an innocent mistake. Mr. Kurdoglu also testified that he copies works in the public domain, but only after checking for copyright marks on the items he purchases. He does not knowingly copy any copyrighted work. The Court found defendant Kurdoglu to be credible in his testimony. A third party witness, Carrie Moe—a customer of both plaintiff and defendants—corroborated defendant Kurdoglu's testimony relating to his intent or lack of willfulness, testifying that in about 1990 she asked him to copy some items designed by plaintiff and that he refused to copy them.

12. Modern Humanistic Bust (Exhibit 17) and Standing Eagle (Exhibit 15).

12A. Before the end of the trial, the Court struck the two counts relating to Modern Humanistic Bust and Standing Eagle because the plaintiff had not presented any evidence of copying as to either. Plaintiff's daughter and business manager, Grace Arrighi, testified that she was aware before suit was filed that Standing Eagle had never been copied. Further findings relating to these were placed in the record on that date.

13. Large Swan (Exhibit 16).

■ 13A. The Court also struck the count relating to the Large Swan (called "Modernistic Swan" in the copyright registration certificate (Exhibit 8) and plaintiff's cease and desist letter of November 12, 1992 (Exhibit 1020)). Plaintiff did not provide defendants with a copy of the registration certificate for this item until October 25, 1994, the morning of trial. The Court, therefore, excluded evidence of registration. The Court did admit into evidence the May, 1992, license (included in Exhibit 8) assigning to plaintiff the exclusive right to sell the work in the western United States. However, that did not cure the defect in the plaintiff's proof of ownership. The reference in the license to the licensor's registration is hearsay. To prevail on this count, plaintiff had to prove that the original copyright is valid. Because plaintiff failed to provide proof of registration in a timely manner, the Court excluded the evidence. Therefore, the plaintiff failed on the foundational issue of proving a valid copyright in the work.

■ 13B. However, even if plaintiff could prove a valid copyright, plaintiff also had to prove access and substantial similarity. Plaintiff failed to prove these elements by a preponderance of the evidence. Defendants first featured a Large Swan in their 1989 catalog, product No. 532, (Exhibit 1027). The model of this version came from Sacramento. Plaintiff did not receive its license until May, 1992. The Court, therefore, found that because the defendants featured a Large Swan in their 1989 catalogue, and the plaintiff did not receive the license until 1992,

the plaintiff has failed to establish access by a preponderance of the evidence.

■ 13C. Plaintiff also alleges infringement as to a second and different version of defendants' Large Swan. After receiving plaintiff's cease and desist letter of November 12, 1992 (Exhibit 1020), defendants made a new and different version of the Large Swan. The Court finds that the plaintiff has not established substantial similarity between plaintiff's Large Swan and defendants' current Large Swan (Exhibit 30). The Swans differ in several ways. Defendants' Large Swan differs from plaintiff's in the beak, which extends to the wings, in its larger tail, and in the lines at the base. The Court has examined both items and found, especially considering the naturalistic treatment of the work, that plaintiff's Large Swan and defendants' Large Swan are not substantially similar.

14. Tall Cactus Lamp (Exhibit 9).

■ 14A. Plaintiff holds a copyright registration in this work dated September 10, 1992 (Exhibit 8). The registration certificate indicates that plaintiff published this work in late May of 1989. The Court did not give great weight to the exact date of publication, given its remoteness in time from the date of copyright registration and the lack of supporting evidence of authorship and publication. The Court notes that the work was not registered within three months of publication or before the alleged infringement. The copyright registration is presumptively valid. However, the presumption of plaintiff's authorship was rebutted, as set forth below.

14B. Plaintiff did not present evidence that it was the author of the Tall Cactus Lamp. Plaintiff's designer, Pete Apsit, testified that he did not know whether he designed plaintiff's Tall Cactus Lamp.

14C. Grace Arrighi, in her review of receipts of items sold to defendants, could not find any receipts reflecting sales of the Tall Cactus Lamp—or any of the other items at issue—to defendants.

14D. Defendants presented evidence that the Tall Cactus Lamp was their creation. According to Mr. Kurdoglu's testimony, defendants first acquired a vase of similar design in early 1989, shown in defendants' 1989 catalog (Exhibit 1027), at page 3. Defendants made the Tall Cactus Lamp from the vase. The Tall Cactus Lamp is also featured in defendants' 1989 catalog (Exhibit 1027), at the last page, item 3233. Defendants also presented an invoice for the photography for the 1989 catalog (Exhibit 1012). The invoice is dated May 26, 1989, and a notation on it indicates it was paid in full on August 9, 1989, thus indicating that work was completed before the invoice date. The Court found defendants' testimony and evidence credible. Mr. Kurdoglu testified that it took four to six weeks to make a mold from the vase and turn it into a lamp, and that it took a further three to four weeks to produce the catalog. Therefore, the Court finds on the facts before it that even if the plaintiff did publish its Tall Cactus Lamp in May 1989, defendants did not have time to copy and did not copy plaintiff's Tall Cactus Lamp. The Court therefore finds that defendants made their Tall Cactus Lamp from the Tall Cactus Vase, both of which are pictured in the 1989 catalog, and that defendants did not copy their Tall Cactus Lamp from plaintiff's work, first published, according to the copyright registration certificate, in May of 1989.

15. Three Dolphins on Base (Exhibit 10).

■ 15A. Plaintiff presented evidence of a valid registration for this work, dated October 7, 1993, a week before filing its lawsuit and more than three months later than the date of publication, listed as January 28, 1992. The Court did not give great weight to the exact date of publication given its remoteness in time from the date of the copyright registration and the lack of supporting evidence of authorship and publication. Plaintiff's designer, Pete Apsit, testified that he did not design plaintiff's Three Dolphins on Base.

15B. Defendant Kurdoglu testified that his version of Three Dolphins on Base (Exhibit 24–B) was designed by Hamil Erkel for him in early 1992 and was an original statue. Defendants instructed Erkel to design the item as a table base (in essence, a decorative table leg). Thus, defendants' Three Dolphins on Base work served a different purpose

from plaintiff's, which was a purely decorative piece. The works are not identical. Defendants instructed Erkel to design the piece with one dolphin head down to the floor for safety reasons to stabilize it. Erkel followed these instructions.

15C. Defendants received the item in time to include it in their 1992 catalog (Exhibit 1023). Although there was no testimony as to the exact date of publication of defendants' 1992 catalog, defendants produced an invoice dated and marked "paid" as of April 24, 1992, for photography for the 1992 catalog (Exhibit 1011).

15D. The Court, therefore, finds defendants' authorship of Three Dolphins on Base credible and further finds it would have been very difficult for defendants to have discovered, modified, made a mold for, and copied plaintiff's Three Dolphins on Base (allegedly published on January 28, 1992) in time for it to be included in defendants' 1992 catalog, pictures for which were taken by April 24, 1992.

15E. Defendant Kurdoglu further testified defendants had no reason to believe they were infringing plaintiff's work in designing their own.

■ 15F. The Court finds that the plaintiff's and defendants' Three Dolphins on Base works are similar in idea and concept. However, the Court finds that both plaintiff's and defendants' items are expressions of three dolphins jumping or leaping and that such ideas cannot be protected. The works are not, in fact, identical because defendants' work features one dolphin swooping downward (the stabilizing feature) while plaintiff's does not. In addition, plaintiff's item is decorative while defendants' item is functional. Therefore, the Court finds that plaintiff has not established either access or substantial similarity by a preponderance of the evidence.

16. Small Modern Swan (Exhibit 11).

■ 16A. Plaintiff presented evidence that it published the work on February 12, 1990, and first registered it on September 10, 1993, not within three months of publication and after the alleged infringement. Again, the Court did not give great weight to the

date of publication, given the state of the evidence and its remoteness in time from the date of the copyright registration. Plaintiff is entitled to a rebuttable presumption of authorship as to this work. Plaintiff did not, however, present any evidence as to the authorship of this piece. Plaintiff's designer, Pete Apsit, stated that he did not design it.

16B. Plaintiff testified that he believed he sold a copy to defendant Kurdoglu in either 1993 or 1991; however, he was unable to identify Mr. Kurdoglu in a photograph. His daughter, Grace Arrighi, plaintiff's business manager, was unable to find a sales receipt showing that defendants had ever purchased any copy of the Small Modern Swan from plaintiff.

16C. Defendants could not recall where they got their Small Modern Swan. However, there is evidence that defendants' Modern Swan preceded that of the plaintiff. Defendants' 1989 catalog (Exhibit 1027), contains a picture of what appears to be the identical piece, No. 533, Modern Swan. Defendants presented a May 26, 1989, invoice (Exhibit 1012) for the photographs in the 1989 catalog marked paid on August 9, 1989. Therefore, the Court finds that defendants have rebutted the plaintiff's presumption of authorship. Even if this is not the case, the Court finds that plaintiff has not established access or copying by a preponderance of the evidence because defendants established that they published a work which appears to be identical almost one year before plaintiff published its Modern Swan. Thus, plaintiff has not proved the elements of infringement by a preponderance of the evidence.

17. Cactus in Pot (Exhibit 13).

■ 17A. Plaintiff first published the work in August 1989, registering it more than three months later, on March 23, 1992. The work was designed by Pete Apsit.

17B. Plaintiff sent defendants a letter putting them on notice of infringement on November 12, 1992 (Exhibit 1020).

17C. Defendant Kurdoglu testified that he first purchased the piece he later copied and sold as Cactus in Pot in Mexico. He

believed it was an "open stock" or public domain item.

17D. After they received the November 12, 1992, letter informing them that Cactus in Pot was plaintiff's work, defendants stopped making the item in that design. Neither plaintiff nor defendants presented any copy of the Cactus in Pot sold by defendants prior to November, 1992, for the Court's inspection. However, both plaintiff and defendants agreed that the defendants' version of Cactus in Pot sold prior to November, 1992 was identical to plaintiff's Cactus in Pot.

17E. In closing argument, plaintiff, in essence, agreed with defendants that the common practice and understanding is to waive further legal action if the response to a cease-and-desist letter is satisfactory. However, plaintiff indicated it was not waiving damages as to the earlier, identical Cactus in Pot sold by defendants prior to November, 1992. This refusal to waive was based upon plaintiff's contention that the defendants' current version of Cactus in Pot, redesigned after November, 1992, is still identical or so substantially similar that it also infringes plaintiff's copyright in Cactus in Pot. Because the Court makes factual findings below that lead it to conclude that defendants' redesigned Cactus in Pot does not infringe plaintiff's copyright as a matter of law, the Court will not impose damages upon defendants for their earlier, identical Cactus in Pot.

17F. After receiving the November 1992 letter, defendants ordered their designer to create a different Cactus in Pot, making it more naturalistic. Defendant Kurdoglu personally supervised the making of a mold for the new piece. The new statue, which was received in evidence in various forms as Exhibits 27–A, B, and C, is clearly different from plaintiff's Cactus in Pot. First, the cactus sits in a different pot with a different design on the pot. The cactus itself also has a different design. The defendants' cactus does not have the buttons featured on plaintiff's work and its ribs are thicker and more curved than the ribs on plaintiff's work. It also lacks the flat areas between the ribs as featured in plaintiff's version. Defendants' later version was the one found and seized during the November 1993 seizure. The Court also notes that, as a naturalistic subject, there are only so many ways that a cactus in a pot can appear.

17G. The issue is not whether defendants could have made their redesigned Cactus in Pot more different, but whether it is substantially similar to the plaintiff's Cactus in Pot. In fact, when witness Grace Arrighi compared the plaintiff's and defendants' items, she stated, "A cactus is a cactus. If I look at both, I say, 'It's a cactus.' "

17H. The Court concludes that the defendants' Cactus in Pot is not substantially similar to the plaintiff's Cactus in Pot, especially in view of the fact that the subject is a naturalistic one. Thus, plaintiff has not proved infringement by a preponderance of the evidence.

18. Squaw Pouring (Exhibit 12).

18A. Plaintiffs registered this work on October 23, 1983. Defendants did not present any evidence contradicting the validity of the copyright or of plaintiff's authorship. Defendants stipulated to access and that the works are identical. In addition, based upon its own inspection of the two works, the Court finds the works to be identical.

18B. On the issue of defendants' state of mind as it relates to willfulness of infringement, the Court finds as follows:

18B–1. The Court finds Mr. Kurdoglu's testimony that defendants never knowingly copied any copyrighted work to be credible.

18B–2. Defendant Kurdoglu's testimony is corroborated by Carrie Moe, who stated that defendant Kurdoglu told her he would not copy the work of another. Although Ms. Moe is defendants' customer (as well as a customer of plaintiff) and defendant has allowed Ms. Moe to store her purchases at his shop, the Court found her to be credible.

18B–3. Specifically as to this count, defendant Kurdoglu presented testimony that he obtained the item, Squaw Pouring, from Mexico around 1991 and, therefore, did not knowingly copy plaintiff's product.

18B–4. Defendant brought in or submitted to the Court copies of the same item

from two different editions of Al's Garden catalog, including its 1994 catalog. Although there was some evidence, later contradicted, that Al had permission through a licensing arrangement to reproduce Squaw Pouring, this would not change the fact that defendants could not have known this. Therefore, it goes to his lack of willfulness, not to the truth of the matter.

18B–5. The Court considered the profusion of items in the United States and Mexican markets, many of which are copyrighted but are sold without any copyright notice, making it more likely that any infringement would be innocent.

18B–6. Defendants presented evidence of the advertisement for sale of identical items in catalogs of many other dealers, not just in recent catalogs but in catalogs from the time period in question (1992), buttressing the finding of lack of willfulness.

18B–7. The fact that even plaintiff, whose owner, Mr. Arrighi, testified credibly that he has tried not to copy others, was sued by Scioto Ceramic Products for copyright infringement in 1992 (Exhibit 1018) illustrates the pervasiveness of the incidence of infringement, albeit innocent, in this field and weighs in favor of a finding of lack of willfulness. Plaintiff subsequently entered into a permanent injunction (Exhibit 1019) which, while containing a disclaimer of wrongdoing on plaintiff's part, restrained plaintiff from copying the twenty-eight (28) items at issue in that case.

18B–8. Sales of the works at issue constitute a very small portion of defendants' product line.

18B–9. The good faith efforts which defendants made to settle this matter as soon as it was brought to their attention by the November 12, 1992 (Exhibit 1020) letter also weigh against willfulness.

18B–10. Based upon these factors and the overall evidence in the case, the Court finds that defendants' infringement of Squaw Pouring was not willful.

19. Indian with Eagle (Exhibit 14).

19A. Plaintiff offered evidence of copyright registration on April 1, 1982 of this piece, which Pete Apsit designed.

19B. Defendant Kurdoglu testified he purchased the original item he used as a mold from Emilio Sandoval (who got it in Mexico) in 1989 or 1990.

19C. Plaintiff's item has two buffaloes at the base. Defendants' does not. Nevertheless, after examination, the Court finds that the works are identical with the exception of the base and that there is substantial similarity between the plaintiff's and defendants' Indian with Eagle.

19D. On the issue of willfulness the Court again finds that defendants did not intend to infringe. Defendants recently bought copies of the same item from Michael's (Exhibit 1024) and Mexico (Exhibit 1004), which are identical to plaintiff's. The exact item was also depicted on the cover of the Designs Plus catalog (Exhibit 1008).

19E. Based upon the wide availability of the Indian with Eagle, the Court finds that defendants reasonably believed this item was in the public domain. The Court finds defendant Kurdoglu to be credible and, incorporating its earlier findings on willfulness from the discussion on Squaw Pouring, does not find willful infringement.

*Conclusions of Law*

1. The Court has jurisdiction under the copyright law and the Lanham Act.

2. The Court finds the plaintiff has not presented any evidence, let alone a preponderance of the evidence, that defendant Gonul Kurdoglu is liable for any infringement or act of unfair competition. Therefore, the case against her is dismissed.

3. The Court has already dismissed plaintiff's claim as to the following—(a) Large Modernistic Swan; (b) Standing Eagle; and (c) Modern Humanistic Bust. The count as to the Modernistic Swan was dismissed because of failure to present an underlying necessary element; namely, proof of registration. The counts as to Standing Eagle and Modern Humanistic Bust were stricken because plaintiff did not present evidence of copying as to either.

4. The Court finds that plaintiff has not proven copyright infringement by a preponderance of the evidence as to the following counts:

(a) Tall Cactus Lamp. Plaintiff has not proved evidence of authorship, access or copying. Defendants have offered proof of their authorship of the work. Therefore, the Court finds that, despite the rebuttable presumption established by the copyright registration, plaintiff has not established authorship. Even if this is incorrect, plaintiff has not established access or copying by a preponderance of the evidence. Plaintiff has, therefore, failed to establish copyright infringement.

(b) Three Dolphins on Base. Although plaintiff has obtained a copyright registration for its own version of the Three Dolphins on Base, the Court concludes that defendant has proved its independent authorship of its version of Three Dolphins. Plaintiff has therefore also failed to establish access to its Three Dolphins as required. The Court finds that, given the naturalistic nature of the subject works and the differences between the works, plaintiff has not met its burden of proving substantial similarity of protected expression.

(c) Small Modern Swan. As previously stated in the Findings of Fact, the Court finds that defendants have rebutted the plaintiff's presumption of authorship. The Court also finds that plaintiff has not established access by a preponderance of the evidence because defendants have proved that they published a Small Modern Swan which appears to be identical to the plaintiff's before plaintiff published its Modern Swan.

(d) Cactus in Pot. The Court finds that defendants' redesigned Cactus in Pot, a naturalistic work, is not substantially similar to plaintiff's Cactus in Pot and therefore does not establish infringement as a matter of law.

5. Plaintiff has proved innocent infringement of the following:

(a) Squaw Pouring;

(b) Indian with Eagle.

Plaintiff has established ownership, access, and substantial similarity by a preponderance of the evidence in the two works above. The Court finds copyright infringement as a matter of law.

6. The Court dismisses plaintiff's claims under the Lanham Act. *Shaw v. Lindheim,* 919 F.2d 1353, 1364 (9th Cir. 1990), held that the Lanham Act will not be expanded to cover cases in which the federal Copyright Act provides an adequate remedy. The Court finds that the Copyright Act does provide an adequate remedy for the following reasons:

(a) The infringement proved in this case was minor compared to the scope of defendants' and plaintiff's businesses.

(b) Plaintiff's claims are based on nothing more than allegations that defendants copied plaintiff's copyrightable works.

(c) Defendants' infringement has been found by the Court not to be willful.

(d) The facts in this case do not establish either express or implied "reverse passing off." There was no evidence that the defendants removed plaintiff's copyright on any work and either replaced it with their own copyright or that defendants removed plaintiff's copyright on any product and sold that same product in an unbranded state.

7. Because the Court dismisses plaintiff's claims under the Lanham Act, it also dismisses plaintiff's claims under the congruent California statute, *Business and Professions Code* Section 17200.

8. Damages for innocent infringement of Squaw Pouring and Indian with Eagle:

(a) Damages are assessed pursuant to 17 U.S.C. § 504(a), which provides for the award of either actual damages and profits or statutory damages. Because plaintiff did not establish actual damages, the Court will assess statutory damages under 504(c). Normally statutory damages for each work may be assessed in a sum of not less than $500 or more than $20,000, unless either party sustains its burden of proof under § 504(c)(2). 17 U.S.C. § 504(c)(1).

The Court finds that plaintiff did not sustain the burden of proving that defendants willfully infringed, as required under § 504(c)(2), for the award of additional statutory damages.

The Court finds, in the language of § 504(c)(2), that defendants were not aware and had no reason to believe that their acts constituted an infringement of copyright. Pursuant to § 504(c)(2), the Court may, therefore, reduce the award in its discretion to a sum of not less than $200. 17 U.S.C. § 504(c)(2).

The Court has considered the following factors in assessing the statutory damages under § 504(c)(2) for lack of willfulness:

(i) The factors already considered and discussed above in the Court's discussion of willfulness.

(ii) The fact that the items in question constituted a very small portion of the sales of either plaintiff or defendants.

(iii) Lack of proof that the plaintiff's sales or profits were impacted or diminished.

(b) The Court assesses the following statutory damages pursuant to § 504(c)(2).

(i) Statutory damages of $200 against defendants Vedat K. Corporation and Vedat Kurdoglu for infringement of the plaintiff's copyrighted Squaw Pouring. Defendants Vedat K. Corporation and Vedat Kurdoglu are jointly and severally liable for these damages.

(ii) Statutory damages of $200 against defendants Vedat K. Corporation and Vedat Kurdoglu for infringement of the plaintiff's copyrighted Indian with Eagle. Defendants Vedat K. Corporation and Vedat Kurdoglu are jointly and severally liable for these damages.

(c) Because the Court found that the defendants' redesigned Cactus in Pot was not substantially similar to its earlier, infringing version of Cactus in Pot, the Court does not award damages or lost profits for defendants' 1991 or 1992 sales of infringing copies. It should be noted that the amount of such damages and lost profits, based upon defendants' sales and net profits, would be approximately $14.

■ 9. *Attorney's Fees.* Under the Copyright Act, the "prevailing party is one who succeeds on a significant issue in the litigation that achieves some of the benefits the party sought in bringing suit." *Warner Brothers, Inc. v. Dae Rim Trading, Inc.,* 877 F.2d 1120, 1126 (2d Cir.1989).

(a) The Court finds that in this case, defendants are the prevailing parties. Defendants clearly succeeded in a substantial part of this litigation, and achieved substantially all the benefits they hoped to achieve in defending the suit.

Defendant Gonul Kurdoglu was completely exonerated on all counts. Mrs. Kurdoglu established at trial that she is not and never has been a shareholder, officer, or director of the defendant corporation, and that her lack of involvement was known to the plaintiff before trial.

Defendants Vedat Kurdoglu and Vedat K. Corporation prevailed on seven of the nine infringement counts, were found merely to be innocent infringers on the remaining two, and were assessed the minimum statutory damages. Defendants established that they never knowingly copied any copyrighted work.

(b) 17 U.S.C. § 505 provides that the "court may ... award a reasonable attorney's fee to the prevailing party as a part of the costs." Under *Fogerty v. Fantasy, Inc.,* —— U.S. ——, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), plaintiffs and defendants are to be treated alike when considering when to award attorney's fees. In *Fogerty,* the Supreme Court made clear that this is a decision left entirely to the equitable discretion of the trial court. However, the Supreme Court noted with approval that the Third Circuit has listed several factors to guide courts' discretion: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Lieb v. Topstone Industries, Inc.,* 788 F.2d 151, 156 (3d Cir.1986).

After considering these factors, the Court finds that defendants are entitled to an award of reasonable attorney's fees. Plain-

tiff's prosecution of this matter was objectively unreasonable. Before filing suit, plaintiff knew that defendants had redesigned the only two works plaintiff had previously challenged and knew, in addition, that defendants never copied one of the works sued on. Following the seizure of defendants' goods and records, plaintiff knew that a second work sued on had never been copied and that defendants' profits were *de minimis*. In their November 11, 1993 letter, defendants offered to discontinue the manufacture of seven of the nine statues, and told plaintiff that they had never made or sold the remaining two statues. Further, defendants offered to stipulate to the entry of a permanent injunction on all nine of the statues. Finally, defendants put plaintiff on notice of most of their substantive defenses. These defenses were almost entirely successful at trial.

Plaintiff also pursued this litigation knowing that in its industry, there are multiple opportunities for innocent copyright infringement. Thus, plaintiff knew that if there was any copying by defendants, it was probably innocent. In addition, plaintiffs knew before trial that defendant Gonul Kurdoglu had no involvement in any copyright infringement. Still, plaintiff insisted on proceeding to trial against her. Finally, there were no complex or novel legal issues in this case which could have justified continuing the action.

Defendants are entitled to reasonable attorney's fees subject to proof.

10. If any Findings of Fact above should be Conclusions of Law, they are so deemed to be. If any Conclusions of Law, above, should have been Findings of Fact, they are so deemed to be.

**SO ORDERED.**