*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0218p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

THOROUGHBRED SOFTWARE INTERNATIONAL, INC.,
*Plaintiff-Appellant,*

*v.*

DICE CORPORATION, CLIFFORD V. DICE, FRED
WAGER, and JOHN DOES 1-10,
*Defendants-Appellees.*

No. 06-2080

>

---

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 03-10259—David M. Lawson, District Judge.

Argued: April 26, 2007

Decided and Filed: June 14, 2007

Before: KEITH and COLE, Circuit Judges; OLIVER, District Judge.[*]

---

## COUNSEL

**ARGUED:** Lindsey H. Taylor, CARELLA, BYRNE, BAIN et al., Roseland, New Jersey, for Appellant. Scott C. Strattard, BRAUN KENDRICK FINKBEINER, Saginaw, Michigan, for Appellees. **ON BRIEF:** Lindsey H. Taylor, CARELLA, BYRNE, BAIN et al., Roseland, New Jersey, for Appellant. Scott C. Strattard, Timothy S. Arnold, BRAUN KENDRICK FINKBEINER, Saginaw, Michigan, for Appellees.

---

## OPINION

---

SOLOMON OLIVER, JR., District Judge. Plaintiff-Appellant Thoroughbred Software International, Inc. (hereinafter, "Thoroughbred") appeals the award of damages and attorney's fees in a case where the district court found Defendants-Appellees Dice Corporation and Clifford V. Dice (hereinafter, collectively, "Dice Corp.") liable for copyright infringement. Thoroughbred appeals the district court's denial of: (1) an award of actual damages for infringing software that was not used by Dice Corp.'s customers; (2) profits that Dice Corp. earned as a result of the infringement; and (3) attorney's fees on the ground that Thoroughbred was not a prevailing party. For the

---

[*]The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

following reasons, we **REVERSE** the district court's judgment denying actual damages for the unused infringing software; **AFFIRM** the denial of profits; and **VACATE** the district court's denial of attorney's fees. We hereby **REMAND** this action to the district court to enter judgment in favor of Thoroughbred on its claim for actual damages for the unused infringing software in the amount of $183,794.25, and to determine whether Thoroughbred, as the prevailing party, is entitled to an award for attorney's fees.

## I. BACKGROUND

Thoroughbred is a New Jersey-based company that develops and sells business accounting computer software. Thoroughbred offers the *Solution*-IV™ software, which contains modules that allow the user to manage various accounting tasks. Thoroughbred also offers other software, such as OPEN*workshop*™ and Thoroughbred BASIC, which interact with the *Solution*-IV software. A license is required for each copy of the software purchased, except for one back-up copy. Although a customer can choose to license only specific modules of a computer program, certain modules will not operate without others. To install the software, the user must contact Thoroughbred to obtain an authorization code. It is permissible to move the software from one computer to another, as long as the software is deleted from the first computer. A user must inform Thoroughbred when software is moved. It is undisputed that Thoroughbred has valid, registered copyrights for all the relevant software. Thoroughbred's license fee ranges from $500 to $30,000, depending upon the number of modules and users sought.

Dice Corp. is a Michigan-based company that provides computer hardware with pre-installed software to its business customers in the security and alarm monitoring industry. Clifford V. Dice (hereinafter, "Dice") is the Chief Executive Officer and sole shareholder of Dice Corp. and Fred Wager (hereinafter, "Wager") is the company's President. Dice Corp. has been one of Thoroughbred's customers since 1986. Dice Corp. purchases software from Thoroughbred and, instead of transferring ownership of the software license by "reselling" it to its own customers (as most of Thoroughbred's customers do), it installs the software on computers (along with software from many other companies), and then rents the computers to its customers.[1] Dice Corp. charges its customers a monthly fee that incorporates "use of the computer hardware, the software, and the service it provides," with no specific cost allocation for any of the installed software. *Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 439 F. Supp. 2d 758, 762 (E.D. Mich. 2006).

Prior to 2001, the parties apparently did not have a written agreement. In 2001, the parties signed the *Solution*-IV Accounting Source Licensing Agreement ("Dealer Agreement"), which purports to appoint Dice Corp. as a non-exclusive dealer of Thoroughbred's software.[2] The Dealer Agreement provides, in pertinent part:

> III. *Agreement*
> 1. TSI [Thoroughbred] hereby appoints Licensee as a non-exclusive dealer and grants to Licensee non-exclusive marketing and licensing rights to *Solution*-IV and Licensee hereby accepts such appointment from TSI. Licensee recognizes and agrees that TSI has established and may establish other non-exclusive dealers in licensing *Solution*-IV who may compete with

---

[1] Thoroughbred licenses its software to two kinds of customers: (1) end-users, who use the software themselves; and (2) dealers, or "resellers," who transfer the software licenses to their own customers. (Appellant's Br. 12.) Dice Corp. is considered an end-user because it does not transfer ownership rights to its customers.

[2] Although the Dealer Agreement refers only to *Solution*-IV software, the parties do not dispute that it relates to all software relevant to this action.

> Licensee. The standard Thoroughbred Software License Agreement is attached to this agreement . . . and is made a part of this agreement.
>
> 2. Licensee shall pay to TSI the Source License fee set forth in the current Product Catalog and Pricing Schedule in return for which Licensee shall receive rights to license *Solution*-IV modules under the terms of this agreement, subject to compliance by Licensee with all terms of this agreement. Upon receipt of the Source License fee and this executed Source License Agreement, TSI shall deliver to Licensee one copy of *Solution*-IV for in-house use plus the *Solution*-IV Source Toolkit manual. The in-house development environment must be licensed separately. New Licensees must agree to attend a *Solution*-IV technical training class before receiving rights to license *Solution*-IV modules to end-user customers.
>
> 3. Licensee shall pay to TSI the end-user module license fees set forth in the then current Product Catalog and Pricing Schedule on each licensing or disposition of *Solution*-IV, whether or not a fee is charged by Licensee and whether or not *Solution*-IV is actually ordered from TSI. These fees are due to TSI even if the resulting installation is highly modified. One copy of the *Solution*-IV System Utilities and either a *Solution*-IV Environment, an IDOL-IV$^{TM}$ Development Environment, or an OPEN*workshop*$^{TM}$ Environment are also required for each installation.

(Dealer Agreement III.1-3, Joint Appendix ("JA") 307.)

The Dealer Agreement also incorporates Thoroughbred's standard Software License Agreement, which provides, in pertinent part:

> 2. OWNERSHIP. THOROUGHBRED SOFTWARE is the sole owner of the enclosed Software and its accompanying documentation. All of the Software and documentation is copyrighted. You may not copy or otherwise reproduce any part of the contents of this package except that you may make one (1) backup copy of the Software and you may load the Software into a computer as an essential step in executing the Software on the computer.
>
> 3. RESTRICTIONS ON USE AND TRANSFER. The original and any backup copies of the Software are to be used only in connection with a single computer. You may not distribute copies of the Software to others. You may not transfer the Software electronically from one computer to another. You may transfer this license, together with the original and all backup copies of the Software, provided that the transferee completes and returns to THOROUGHBRED SOFTWARE a Warranty Registration Card and agrees to be bound by the terms of this License Agreement. Any modification or translation of the Software by the Licensee or by any other party shall be subject to the full terms and conditions of this License Agreement. YOU MAY NOT USE, MODIFY, COPY, OR TRANSFER THE SOFTWARE, OR ANY MODIFICATION, COPY, OR MERGED PORTION THEREOF, IN WHOLE OR IN PART, EXCEPT AS EXPRESSLY PROVIDED FOR IN THIS LICENSE AGREEMENT.

(Software License Agreement ¶¶ 2-3, JA 309-10.)

The Dealer Agreement also states that it "(i) supersedes all prior agreements between [Thoroughbred] and [Dice Corp.] with respect to the same subject matter, and fully sets forth our understanding with respect to the subject matter hereof; [and] (ii) shall not be modified, except by written agreement . . . ." (Dealer Agreement VII.1, JA 308.) Dice Corp. maintains that, prior to and during the Dealer Agreement, the parties had a verbal agreement that allowed Dice Corp. to install an entire software license, but pay only for the modules that it or its customers used.

In the fall of 2005, an apparently disgruntled former Dice Corp. employee informed Thoroughbred that Dice Corp. possessed a "crack" or "lock pick" program that allowed it "to copy Thoroughbred's software and install it without obtaining authorization codes from Thoroughbred." *Thoroughbred Software*, 439 F. Supp. 2d at 765. Dice Corp. maintains that one of its employees developed the program on his own time, and that the program's purpose was to ensure that Dice Corp. "would have a steady supply of Thoroughbred software in the event that Thoroughbred's bankruptcy reorganization was unsuccessful," and that some employees used the crack program to save time when "activating legally purchased software packages at customer locations instead of using Thoroughbred's website" to obtain an authorization code. *Id.*

The discovery of the crack program prompted Thoroughbred to conduct an audit "of Dice Corp.'s computers, records of installations, and licenses sold to it by Thoroughbred." *Id.* Besides finding that Dice Corp. possessed software that was properly authorized and paid for, yet was not installed on any computer, "the audit showed that Dice Corp. had 33 unauthorized installations of Solution-IV software, plus an additional five customers running unlicensed modules, and 31 unauthorized installations of OPENworkshop software," which were all installed on computers. *Id.* Although Dice Corp. disputed the method by which the audit was conducted, the district court accepted the results of the audit. *Id.* at 767.

After a bench trial held on April 19 and 20, 2005, the district court found that Dice Corp. "exceeded the scope of its license and violated the Copyright Act," *id.* at 769, by copying Thoroughbred's software, which resulted in "33 unauthorized installations of Solution-IV software, plus an additional five customers running unlicensed modules, and 31 unauthorized installations of OPENworkshop software." *Id.* at 767. The district court held that the parties' 2001 Dealer Agreement superceded any prior verbal agreement that may have existed, finding that

> [t]he Court must reject the testimony of the defendants that a special arrangement was made with Thoroughbred that allowed the installation of software outside the [Dealer] [A]greement. Although this arrangement may have existed in the past, the parties' intention expressed in the [Dealer] [A]greement . . . set forth the terms of the arrangement going forward.

*Id.* Consequently, the district court rejected Dice Corp.'s reliance on the prior verbal agreement that the parties allegedly had, and stated that "[Dice Corp.'s] claim that prior practice allowed it to load unauthorized versions of protected software onto the computers used by its customers, which constituted copying the copyrighted work, is untenable." *Id.* at 769. The district court also found Dice vicariously liable. *Id.*

The district court further found that 16 unauthorized copies of the *Solution*-IV software were being used by Dice Corp.'s customers. *Id.* at 767. Conversely, the court found that 17 unauthorized copies of the *Solution*-IV software and 31 unauthorized installations of OPEN*workshop* software were not being used by either Dice Corp. or their customers, and that Thoroughbred had not rebutted Dice Corp.'s assertion that the customers could not access the unused software, due to a security program that Dice Corp. had developed "to prevent access without paying." *Id.*

The district court awarded actual damages for the used software, and denied actual damages for the unused software. The court also declined to award Thoroughbred recovery for profits that Dice Corp. made from the infringement. In addition, the district court declined to award attorney's fees to either party on the ground that no party constituted a "prevailing party" under the relevant statute. On July 28, 2006, Thoroughbred appealed the district court's denial of recovery for actual damages for the unused infringing software, Dice Corp.'s profits from the infringing software, and attorney's fees. Dice Corp. does not appeal the issue of liability.

## II. STANDARD OF REVIEW

Both the issues of whether Thoroughbred is entitled to recover actual damages for the unused infringing software and whether it is entitled to recover Dice Corp.'s profits from the infringement are subject to *de novo* review as they involve mixed questions of law and fact. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999).

The issue of whether attorney's fees should be awarded is reviewed for abuse of discretion. *Bridgeport Music v. Diamond Time*, 371 F.3d 883, 892 (6th Cir. 2004). Discretion is abused when a district court "relies on clearly erroneous factual findings, improperly applies the law, or uses an erroneous legal standard." *Id.* at 893.

## III. LAW AND ANALYSIS

### A. Actual Damages for Unused Infringing Copies of Software

A plaintiff may seek either actual damages or statutory damages for copyright infringement. Thoroughbred seeks actual damages under 17 U.S.C. § 504(b), which provides, in pertinent part:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages.

A plaintiff seeking actual damages "must prove the existence of a causal connection between the . . . alleged infringement and some loss of anticipated revenue." *Quinn v. City of Detroit*, 23 F. Supp. 2d 741, 751 (E.D. Mich. 1998). Neither party disputes the district court's finding that the proper measure of actual damages in the instant case is "the amount Thoroughbred would have received but for Dice Corp.'s unlawful copying of the software." *Thoroughbred Software*, 439 F. Supp. 2d at 772. Further, the parties do not challenge the amount of actual damages that the district court awarded to Thoroughbred for the used software.

The issue is whether Thoroughbred can prove that it was damaged by the unused copies that the district court found to be infringing. Dice Corp. argues that Thoroughbred cannot show that it was damaged as a result of Dice Corp. having made unused copies because Thoroughbred cannot show that it sold less software as a result of Dice Corp.'s infringements. In fact, Dice Corp. contends that it would not have bought the infringing copies if it had been required to pay a license fee for all of the modules regardless of whether Dice Corp.'s customers needed or used them. The district court agreed with Dice Corp., finding that Thoroughbred had failed to show a causal connection for the unused copies because the lack of use "cast considerable doubt on the proposition that [Thoroughbred] would have made these sales [to Dice Corp.] absent the infringing conduct." *Id*. at 773. The district court's determination that "there was little possibility that Thoroughbred would suffer a financial loss by the copying activity" was based on Dice Corp.'s testimony that it made the extra copies simply "as a matter of convenience" in case a customer later wanted to activate a feature, at which point Dice Corp. would purportedly contact Thoroughbred for authorization and payment. *Id.* However, this reasoning conflicts with the district court's finding that the Dealer

Agreement superceded any verbal side agreement between the parties. Furthermore, the Dealer Agreement does not mention any arrangement that would allow Dice Corp. to make copies of licensed software, or to install licenses without prior payment to and approval from Thoroughbred. (Dealer Agreement III.2-3, JA 307.) The Software License Agreement explicitly prohibits "copy[ing] or otherwise reproduc[ing] any part of the contents of this package except that you may make one (1) backup copy of the Software and you may load the Software into a computer . . . ." (Software License Agreement 2, JA 309.)

In facts similar to the instant case, the Second Circuit has held that a copyright owner's "actual damages may include in appropriate cases the reasonable license fee on which a willing buyer and a willing seller would have agreed for the use taken by the infringer." *Davis v. Gap, Inc.*, 246 F.3d 152, 167 (2d Cir. 2001). *Davis* involved an eyeglasses designer who sued a retail store, The Gap, Inc., for using the plaintiff's product in an ad campaign without permission or payment. *Id.* at 155-56. In reversing the district court, the Second Circuit held that the license fee that the plaintiff could have received from the defendant was sufficient to constitute actual damages, even without a showing of lost sales:

> [T]he defendant has surreptitiously taken a valuable right, for which plaintiff could have charged a reasonable fee. Plaintiff's revenue is thus smaller than it would have been if defendant had paid for what he took. On the other hand, plaintiff's revenue is no less than it would have been if the defendant had refrained from the taking. In our view, as between leaving the victim of the illegal taking with nothing, and charging the illegal taker with the reasonable cost of what he took, the latter, at least in some circumstances, is the preferable solution.

*Id.* at 166.

In the instant case, the Dealer Agreement provides that a license fee is due for each copy of software purchased, and that the licensee cannot make additional copies. Accordingly, the causal connection between the unused infringing software and Thoroughbred's actual damages is that, under the Dealer Agreement, Dice Corp. should have paid Thoroughbred a license fee for each copy of the software. Thus, Dice Corp. is liable for the unpaid license fees for all the unauthorized copies it made, regardless of whether these copies were accessible to or used by Dice Corp.'s customers.[3] Consequently, the district court's finding that there were no actual damages for the copies that were unused and/or inaccessible to Dice Corp.'s customers was erroneous. Therefore, we reverse the district court and award actual damages for the unused infringing software.

The lost license fee that the district court used to measure actual damages for the used software copies is also the proper measure of actual damages for the unused copies. *See Thoroughbred Software*, 439 F. Supp. 2d at 772-73. It is undisputed that these amounts, as determined by the district court's opinion, are $82,894.75 for the 17 unused infringing *Solution*-IV installations and $100,899.50 for the 31 unused infringing OPEN*workshop* installations. *Id.* at 767. Therefore, judgment for Thoroughbred in the amount of $183,794.25 should be entered by the district court on remand.

---

[3]Dice Corp. also argues that because it created a security program to ensure that its customers did not access the infringing software, it should not have to pay for the infringing copies that it admittedly made. Yet the effort that an infringer takes to ensure that no one else can benefit from the illegally-gotten software does not negate the fact that the infringer illegally obtained the software in the first place.

### B.  Profits

In addition to actual damages, a plaintiff can obtain the infringer's profits, to the extent that they have not already been accounted for under actual damages.  17 U.S.C. § 504(b).  Profits, like other damages, "must be based on credible evidence, not speculation." *Rainey v. Wayne State Univ.*, 26 F. Supp. 2d 963, 971 (E.D. Mich. 1998).  To assess the infringer's profits,  the copyright owner must first show evidence of the infringer's gross revenue attributable to the infringement.  17 U.S.C. § 504(b); *Johnson v. Jones*, 149 F.3d 494, 506 (6th Cir. 1998).  Then the burden shifts to the defendant to prove "deductible expenses."  17 U.S.C. § 504(b); *Johnson*, 149 F.3d at 506.

In the instant case, the proper measure of the infringer's profits is the amount that Dice Corp. charges its customers for the infringing software, minus the amount that Dice Corp. should have paid Thoroughbred for the infringing software (i.e., the lost license fee), which has already been included as actual damages.  However, Thoroughbred has not put forth any evidence relating to this amount. Thoroughbred argues that, because Dice Corp. does not delineate which part of its monthly customer fee relates to software, Thoroughbred cannot provide a precise amount of Dice Corp.'s profits from the infringing software.  Consequently, Thoroughbred instead offers evidence of its own suggested retail price for the software as a measure for what it suggests is Dice Corp.'s gross revenue. Thoroughbred suggests that its retail price could then be discounted by the license fee to calculate Dice Corp.'s relevant profits.

The district court found that this measurement failed because "Thoroughbred's own retail price, or even its discounted price, is no measure of Dice Corp.'s revenue." *Thoroughbred Software*, 439 F. Supp. 2d at 771.  We agree.  There is no evidence that what Thoroughbred charged its retail customers for software bears any resemblance to what Dice Corp. charged its customers to lease software.  Consequently, the district court did not err in concluding that this amount was not a reasonable approximation of Dice Corp.'s gross revenue from the infringing software.  Therefore, Thoroughbred has failed to meet its initial burden to recover Dice Corp.'s profits from the infringement.

Although Dice Corp.'s opaque pricing scheme admittedly makes it more difficult for Thoroughbred to meet its burden to show Dice Corp.'s gross revenue, this complication does not relieve Thoroughbred of its obligation to put forth evidence that would allow the trier of fact to determine what portion of Dice Corp.'s monthly customer fee was attributable to the infringing software.  In the instant circumstance, Thoroughbred might have offered evidence of the entire monthly fee that Dice Corp. charges a customer, and then submitted expert testimony as to what portion of this monthly charge could reasonably be subtracted for the use of a computer, customer service, and the like.  Even if the resulting amount still included some non-infringing revenue, this method might have discharged Thoroughbred's burden and placed the onus either on Dice Corp. to prove deductible expenses or on the court to apportion.  *See Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 828-29 (9th Cir. 1985) ("'In cases such as this where an infringer's profits are not entirely due to the infringement, and the evidence suggests some division which may rationally be used as a springboard it is the duty of the court to make some apportionment.'" (quoting *Orgel v. Clark Boardman Co.*, 301 F.2d 119, 121 (2d Cir. 1962))).  As the record stands, Thoroughbred has failed to offer any reliable evidence to represent the measure of Dice Corp.'s relevant profits. Therefore, we affirm the district court in declining to award Thoroughbred recovery for Dice Corp.'s profits from the infringing software.

### C.  Attorney's Fees

Section 505 of the Copyright Act of 1976 states that "[e]xcept as otherwise provided by this title, the court may . . . award a reasonable attorney's fee to the prevailing party . . . ."  17 U.S.C. § 505.  This Court uses four non-exclusive factors to determine whether to award attorney's fees in

a copyright action: "frivolousness of the claim, motivation, reasonableness, and deterrence." *Coles v. Wonder*, 283 F.3d 798, 804 (6th Cir. 2002) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).

> In the instant case, the district court summarily declined to award attorney's fees, reasoning that

> > no party except Fred Wager [who was dismissed as not vicariously liable] has *prevailed in full* in this case, so the award of attorney fees is inappropriate. As to defendant Wager, the court has considered the factors committed to its discretion and concludes that the weight of the factors does not favor an award of attorney fees.

*Thoroughbred Software*, 439 F. Supp. 2d at 773 (emphasis added). Thoroughbred appeals, arguing that it is the prevailing party and that the relevant discretionary factors weigh in favor of awarding attorney's fees.

Dice Corp. first contends that it is the "prevailing party." Yet the case that Dice Corp. cites, *Florentine Art Studio v. Vedet K. Corp.*, 891 F. Supp. 532 (C.D. Cal. 1995), is distinguishable from the instant case. The court in *Florentine* found that the defendants had prevailed where they "established that they never knowingly copied any copyrighted work"; one defendant was exonerated; and two others "prevailed on seven of the nine infringement counts, were found merely to be innocent infringers on the remaining two, and were assessed the minimum statutory damages." *Id.* at 541. In the instant case, the district court found that Dice Corp. infringed all of the copies identified by the audit. Furthermore, the district court ordered Dice Corp. to pay Thoroughbred $29,630.25 in actual damages, and this Court now orders it to pay an additional $183,794.25. Under these circumstances, Dice Corp. is not the prevailing party.

Dice Corp. also argues that because Thoroughbred voluntarily dismissed several alternative theories of recovery it is precluded from being a "prevailing party." However, the voluntarily dismissed claims were not copyright infringement claims, so they do not bear on who prevailed under the Copyright Act. Furthermore, there is no requirement that a party must prevail "in full" to obtain attorney's fees. In copyright infringement cases, "[g]enerally, the prevailing party is one who succeeds on a significant issue in the litigation that achieves some of the benefits the party sought in bringing suit." *Warner Bros., Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1126 (2d Cir. 1989). Likewise, Nimmer states that

> [t]he plaintiff will ordinarily be regarded as the prevailing party if he succeeds at trial in establishing the defendant's liability, even if the damages awarded are nominal or nothing. But courts at times characterize as "prevailing" a defendant who, albeit suffering adverse entry of judgment, substantially beats back an oppressive plaintiff. The standard to emerge here is that the "prevailing party is one who succeeds on a significant issue in the litigation that achieves some of the benefits the party sought in bringing suit." On that basis, it has been held that a "party's success on a claim that is 'purely technical or de minimis' does not qualify him as a 'prevailing party.'"

4 Nimmer on Copyright § 14.10[B] (citations omitted). Contrary to relevant precedent, the district court required a party to prevail "in full" in order to constitute the "prevailing party." We therefore find that the district court erred in this determination. Furthermore, Thoroughbred has now fully prevailed on its claim for actual damages, for a total award of $213,424.50, which is certainly more than a technical or de minimis amount. The fact that Thoroughbred did not succeed on its claim for profits does not preclude it from being the prevailing party.

However, our finding that the district court erroneously failed to find that Thoroughbred was the prevailing party does not automatically entitle Thoroughbred to an award for attorney's fees. We have held that "[t]he discretion to grant attorney fees in copyright infringement cases is to be exercised in an evenhanded manner with respect to prevailing plaintiffs and prevailing defendants, and in a manner consistent with the primary purposes of the Copyright Act." *Bridgeport Music*, 371 F.3d at 893. In copyright infringement cases, attorney's fees are not awarded automatically. *Id.* However, they are awarded routinely. *Broad. Music, Inc. v. Rooster's, Inc.*, 2006 U.S. Dist. LEXIS 36616, at *10 (E.D. Ky. 2006); *see Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 380 (5th Cir. 2004) (awarding attorney's fees to the prevailing party in a copyright action "is the rule rather than the exception and [they] should be awarded routinely") (quotation omitted). As the district court did not find that any party besides Wager had prevailed, it neglected to discuss the discretionary factors as to Thoroughbred. Therefore, we vacate the district court's denial of attorney's fees and remand for a determination of whether Thoroughbred, as the prevailing party, is entitled to an award for attorney's fees.

## IV. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's judgment denying actual damages for the unused infringing copies of software; we **AFFIRM** the denial of Dice Corp.'s profits; and we **VACATE** the district court's denial of attorney's fees. We hereby **REMAND** this case to the district court to enter an award of $183,794.25 in Thoroughbred's favor and to determine whether, as the prevailing party, Thoroughbred is entitled to an award for attorney's fees.