RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0267p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

CATHERINE BALSLEY, a/k/a Catherine Bosley;
RICHARD BROWN,

              *Plaintiffs-Appellees,*

         *v.*

LFP, INC.,

              *Defendant-Appellant.*

No. 11-3445

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:08-cv-491—Solomon Oliver, Jr., Chief District Judge.

Argued: July 17, 2012

Decided and Filed:  August 16, 2012

Before:  GUY and CLAY, Circuit Judges; HOOD, District Judge.<sup>*</sup>

—————————————

## COUNSEL

—————————————

**ARGUED:** Timothy P. Murphy, LIPSITZ GREEN SCIME CAMBRIA, LLP, Buffalo, New York, for Appellant.  Richard C. Haber, HABER POLK KABAT LLP, Cleveland, Ohio, for Appellees.  **ON BRIEF:** Timothy P. Murphy, LIPSITZ GREEN SCIME CAMBRIA, LLP, Buffalo, New York, for Appellant.  Andrew A. Kabat, HABER POLK KABAT LLP, Cleveland, Ohio, for Appellees.

—————————————

## OPINION

—————————————

CLAY, Circuit Judge.  Defendant LFP, Inc. (a.k.a. Larry Flynt Publications), publisher of *Hustler* magazine, appeals multiple orders of the district court, following a jury verdict in favor of Plaintiffs Catherine Balsley (a.k.a. Catherine Bosley) and her

———————————
<sup>*</sup>The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

husband Richard Brown in their action for direct copyright infringement, filed under 17 U.S.C. §§ 101 *et seq*.  Defendant appeals the district court's denial of its Rule 50(b) motion for judgment as a matter of law, its Rule 59 motion for a new trial, and its motion for attorney's fees.  For the reasons set forth below, we **AFFIRM** the district court's orders.

## BACKGROUND

### A.        *Hustler* **Magazine's "Hot News Babes" Contest**

Defendant LFP owns and publishes *Hustler* magazine, a monthly magazine that "contains graphic images and stories about sex."  The magazine publishes extremely illicit photographs, both real and fabricated.  Relevant to this case is a section of the magazine called "Bits & Pieces," which has a recurring "Hot News Babes" piece.  The "Hot News Babes" piece is a "contest" that has been a part of the magazine since 2005 and is listed in each issue's Table of Contents.  The contest invites *Hustler* readers to nominate young, attractive female news reporters; *Hustler* editors then review the submissions and feature one reporter's picture in each edition.  The reader who nominates the chosen reporter receives a "prize pack."  *Hustler*'s Editorial Director Bruce David, Managing Editor N. Morgan Hagen, and "Bits & Pieces" Editor Keith Valcourt agreed that the contest was created to encourage reader participation and interest in the magazine and to generate magazine sales.

### B.        **Bosley's Photographs**

In March 2003, Bosley was a 37-year-old news anchor for a CBS television affiliate in Ohio.  While on vacation in Florida, Bosley entered a "wet t-shirt" contest at a bar and ultimately danced nude.  An amateur photographer named Gontran Durocher was in attendance and took pictures of Bosley in various states of undress, without Bosley's knowledge.  Durocher published the photographs of Bosley on *lenshead.com* from May to June 2003.  Durocher included a visual copyright notice with each photo and provided a general warning that the photographs were the property of *lenshead.com*

and could not be reproduced in part or whole. A few months later, Bosley lost her position as anchor when the story was publicly reported.

Plaintiffs sought ownership of the photographs so that they would have a legal means of ending the photographs' dissemination. They negotiated with Durocher, who sold, transferred, and assigned all rights, title, and interest in the copyright to the photographs to Plaintiffs. Plaintiffs then registered their acquired copyright with the United States Copyright Office on August 25, 2004. As public interest in the photographs diminished in 2004, Bosley was employed as a television reporter in another city.

### C.　　*Hustler***'s Use of Bosley's Photograph**

One of *Hustler*'s readers, Ken Blazina, was aware of *Hustler*'s "Hot News Babes" contest and decided to nominate Bosley as a "hot news babe" several years after the Florida incident. Blazina wrote to *Hustler* on August 5, 2005 and described Bosley as the "HOTTEST babe ever." He did not include a photograph, but he did explain that nude photographs of Bosley were available online. Blazina also mentioned that Bosley lost her job because of the *lenshead.com* publication of the photographs. Blazina's submission was received by Valcourt and given to David, who asked *Hustler*'s art department to locate pictures of Bosley. David received three pictures in response: a professional head shot of Bosley and two pictures taken of Bosley during the "wet t-shirt" contest, one where Bosley was completely nude and another where she had partially exposed her breast while being sprayed with a hose. The latter image was one of the photographs taken by Durocher and copyrighted by Plaintiffs (hereinafter "the Bosley photograph").

Defendant's editors were aware that the Bosley photograph was copyrighted, but did not know who the owner was. David allegedly sent the Bosley photograph to Mark Johnson, *Hustler*'s Research Director, and asked Johnson to locate the copyright owner. David contended that Johnson attempted to locate the photograph's copyright owner but was unable to do so. Johnson, however, testified that no one asked him to find the copyright owner and that he never attempted to do so. Having failed to locate the

copyright owner, Defendant asked its retained counsel, William Feigenbaum at Lipsitz, Green, Scime, Cambria, LLP, whether it could publish the Bosley photograph in *Hustler* without obtaining a license from the copyright owner. Defendant did not provide any information to its counsel regarding where or how the photograph would be used. Feigenbaum concluded that Defendant could publish the photograph as "fair use" without the need for permission.

Defendant ultimately published the Bosley photograph in the February 2006 issue of *Hustler*, designating Bosley as the "Hot News Babe" of that month. Next to the picture, Defendant included a short description of Bosley and a description of the "Hot News Babe" contest:

> This month's eye candy is Catherine Bosley from Cleveland's WOIO Channel 19. The anchorwoman not only looks good, but apparently also likes to party. Previously, while at WKBN in Youngstown, Ohio, she tendered her resignation after topless shots of the fetching blonde at a Florida wet T-shirt contest surfaced all over the Internet. Thanks to K.B. for an excellent submission.
> Remember, to nominate a local news babe, provide the hottie's full name, station and channel (include a picture if possible). Should your favorite be chosen as an issue's "Tasty Talking Head," you'll receive a HUSTLER prize pack. Send your pick to HUSTLER's "Hot News Babes," c/o *Bits & Pieces*, 8484 Wilshire Blvd., Suite 900, Beverly Hills, CA 902111.

The three-sentence portion describing Bosley was reworded using the information in Blazina's contest submission letter. Ultimately, 380,000 copies of the February 2006 issue of *Hustler* were published and 180,474 were sold, with gross sales in excess of one million dollars.

### D.    Plaintiffs' Civil Action

Plaintiffs eventually discovered that their copyrighted photograph was published by *Hustler*. In February 2008, they filed a complaint against Defendant in the district court asserting (1) direct copyright infringement, in violation of 17 U.S.C. §§ 101 *et seq.*; (2) contributory copyright infringement, in violation of 17 U.S.C. §§ 101 *et seq.*;

(3) vicarious copyright infringement, allegedly in violation of 17 U.S.C. § 106(1), (3), and (5); (4) violation of the Ohio common law right of privacy; (5) violation of the Ohio Revised Code (ORC) §§ 2741.01 *et seq.* right of publicity; (6) violation of the Ohio Deceptive Trade Practices Act (ODTPA), ORC §§ 4165.01 *et seq.*; and (7) liability under respondeat superior.  Prior to trial, the parties jointly and voluntarily stipulated to dismissal of counts (2) and (3) for contributory and vicarious copyright.  The district court dismissed count (6) for the ODTPA violation and count (7) for respondeat superior due to failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Later, the court granted summary judgment to Defendant under Federal Rule of Civil Procedure 56 on counts (4) and (5) for violation of the Ohio right to privacy and right of publicity.  Finally, a jury trial was held on the only remaining claim, count (1) for direct copyright infringement.

At trial, the parties provided several stipulations:

> 1. Defendant LFP, Inc. published a photograph of Catherine Bosley in the February, 2006 issue of *Hustler* magazine identified as "#40 Bosley with Hose."
>
> 2. Plaintiffs owned the copyright to photograph "#40 Bosley with Hose" when it was published by Defendant LFP in the February 2006 issue of *Hustler* magazine.
>
> 3. Defendant LFP did not receive the permission of Plaintiffs to utilize photograph "#40 Bosley with Hose" in the February 2006 issue of *Hustler* magazine.

Although Defendant admitted the elements of direct copyright infringement, it raised the affirmative defense of the fair use doctrine and argued that its conduct was not willful in light of its reliance on counsel's advice.  To support its fair use defense, Defendant called several of LFP's employees, as well as Feigenbaum, as witnesses.  Defendant also called Renee Howdeshell as an expert witness on the issue of profits.  Defendant submitted that the total sales for the February 2006 issue was $832,000, with an additional $316,000 in advertising revenue.  Howdeshell testified that even though Defendant profited from the February 2006 edition, none of the profits could be attributed to Plaintiffs' photograph, because the magazine is usually sold in shrinkwrap

and because there was no reference to the photograph on the magazine's cover. Plaintiffs argued that Defendant had profited from the photograph and suggested that the profit amounted to $265,000.

Following the presentation of the evidence, Defendant moved for judgment as a matter of law under Rule 50(a) on the basis that its actions were covered by the "fair use" doctrine, and thus it could not be liable for direct copyright infringement. The district court reserved its decision.

The jury found in favor of Plaintiffs on the direct copyright infringement claim, thereby rejecting Defendant's fair use defense. The jury explicitly found, however, that Defendant's conduct was not "willful" in light of the Defendant's defense of good faith/advice of counsel. The jury awarded $135,000 to Plaintiffs. The district court then denied Defendant's Rule 50(a) motion. Defendant filed a motion under both Rule 50(b), as a renewed motion for judgment as a matter of law, and Rule 59, as a motion for a new trial, arguing that no reasonable jury could have rejected its fair use defense, that statements made by Plaintiffs' counsel prejudiced Defendant's right to a fair trial, and that the award of profits was excessive. The district court denied the motion on all grounds.

Subsequently, Defendant and Plaintiffs both filed motions to recover attorney's fees. The district court granted attorney's fees to Plaintiffs as the prevailing party, in the amount of $133,812.51, but denied Defendant's request for fees. Defendant timely appealed the district court's orders.

## DISCUSSION

### I.    RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW

We review *de novo* a renewed motion for judgment as a matter of law filed pursuant to Federal Rule of Civil Procedure 50(b). *Barnes v. City of Cin.*, 401 F.3d 729, 736 (6th Cir. 2005). "Judgment as a matter of law may only be granted if, when viewing the evidence in a light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences, there is no genuine issue of material fact for the jury,

and reasonable minds could come to but one conclusion in favor of the moving party." *Id.* Where, as here, a party raises a Rule 50(b) motion on the basis that the jury's decision was against the weight of evidence:

> the standard of review . . . is identical to that used by the district court. The evidence should not be weighed, and the credibility of the witnesses should not be questioned. The judgment of this court should not be substituted for that of the jury . . . .

*Williams v. Nashville Network*, 132 F.3d 1123, 1130–31 (6th Cir. 1997); *Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 531 (6th Cir. 2005).

Defendant argues that the district court erred in denying its Rule 50(b) motion, because Defendant contends that a reasonable jury could not have rejected its fair use defense against Plaintiffs' direct copyright infringement claim.[1] Direct copyright infringement may be proved by demonstrating: "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Bridgeport Music, Inc. v. WB Music Corp.* (*WB Music I*), 508 F.3d 394, 398 (6th Cir. 2007). Defendant admitted to the two elements of copyright infringement, but raised the affirmative defense that it was not subject to liability because its use of the Bosley photograph was fair. *See Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 581 (6th Cir. 2007).

> The "fair use" defense has been codified by statute and provides, in relevant part:

> [T]he fair use of a copyrighted work, including such use by reproduction in copies . . . , for purposes such as criticism, comment, news reporting, teaching . . . , scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

---

[1] Defendant also appears to appeal the district court's denial of its Rule 56 motion for summary judgment and its Rule 50(a) motion for judgment as a matter of law. However, "in cases where an appellant made a Rule 56 motion for summary judgment that was denied, makes those same arguments in a Rule 50(a) motion at the close of evidence that was also denied, lost in front of a jury, then renewed its arguments in a rejected Rule 50(b) motion after the entry of judgment, we will review only the denial of the Rule 50(b) motion." *K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 174 (6th Cir. 1996); *see Oritz v. Jordan*, 131 S. Ct. 884, 889 (2011).

> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation
> to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of
> the copyrighted work.

17 U.S.C. § 107.  These four factors guide courts in deciding cases within the purpose of the fair-use doctrine, which "is to ensure that courts 'avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster.'" *Zomba Enters.*, 491 F.3d at 581 (quoting *Princeton Univ. Press v. Mich. Doc. Servs., Inc.*, 99 F.3d 1381, 1385 (6th Cir. 1996) (en banc), *cert. denied*, 520 U.S. 1156, (1997)).  We must consider these factors in light of the evidence in the record to determine whether reasonable minds could have come to the conclusion that Defendant's publication did not constitute fair use.

###     A.       Purpose and Character of the Use

Under the first factor, we study "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1).  In evaluating the facts under this element, "we consider whether the new work is 'transformative,' and whether the use of that work is for commercial or noncommercial purposes." *Zomba Enters.*, 491 F.3d at 582; *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (holding that transformative works "lie at the heart of the fair use doctrine[]" because their creation furthers "the goal of copyright, to promote science and the arts").  The issue is not just whether the "sole motive of the use is monetary gain," but whether "the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 544 (6th Cir. 2004) (internal quotation marks and emphasis omitted).  The Supreme Court has further described this inquiry as one where the court considers:

> whether the new work merely "supersedes the objects" of the original
> creation, . . . [i.e.,] "supplanting" the original . . . or instead adds
> something new, with a further purpose or different character, altering the

first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is "transformative."

*Campbell*, 510 U.S. at 579 (internal alterations and citation omitted). Where "an original work is merely retransmitted in a different medium" or where the "resulting use of the copyrighted work . . . [is] the same as the original use," the new work is not "transformative." *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818–19 (9th Cir. 2003) (substituted opinion).

In this case, Defendant's use of the Bosley photograph was clearly for commercial purposes, rather than for noncommercial, educational purposes. *Hustler* editors admitted that the "Hot News Babes" section of the magazine was added to generate interest, sales, and profits. And common sense informs any reasonable jury that the contest would, in fact, be in place for commercial purposes, by encouraging the involvement of its readers and promising illicit pictures of real women who are in the public eye. Although Defendant argued at trial that the "Hot News Babes" piece was a noncommercial, informative commentary on Bosley, the jury could have rejected that argument in light of the contest aspect of the piece, the picture and description of the Bosley photograph that appeared in *Hustler*, and the fact that the incident giving rise to the picture was three years old and no longer considered newsworthy.

We must next consider whether there was anything "transformative" in Defendant's use of the Bosley photograph. The picture was unaltered other than for minor cropping and was merely reprinted in a different medium—a magazine rather than a website—essentially serving as a market replacement. Although reprinting a photograph may not result in an automatic copyright violation, *see Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007), we agree that Defendant did not add any creative message or meaning to the photograph. *See Campbell*, 510 U.S. at 579. Defendant's use of the photograph was the same as Durocher's original use—to shock, arouse, and amuse. Defendant argues that its use was transformative because the original work was published on *lenshead.com* to depict the fact that Bosley participated in the wet t-shirt contest, whereas Defendant used the picture to "illustrate its

entertainment news story." We disagree with this tenuous assertion. "In light of the context of the publication, the jury could have reasonably concluded that the photograph was used . . . to enhance readership, rather than as a social commentary." *Brewer v. Hustler Magazine, Inc*., 749 F.2d 527, 529 (9th Cir. 1984) (also involving *Hustler*'s publication of a photograph in its "Bits & Pieces" magazine section). The jury could have reasonably concluded that *Hustler* was selling a picture, not a story.

### B.      Nature of the Copyrighted Work

Turning to the second factor, we must assess "the nature of the copyrighted work." 17 U.S.C. § 107(2). "The law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy." *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 563 (1985). "Courts . . . consider[] two aspects of the work in evaluating this factor: first, the extent to which it is a creative work enjoying broader copyright protection as opposed to a factual work requiring broader dissemination, and second, whether it is unpublished, in which case the right of first publication is implicated." *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 23 (1st Cir. 2000) (internal citations omitted). The artist's right of first publication does not apply in this case, so we discuss only whether the work was factual or creative.

Defendant admits that  photographs may sometimes be the creative work of the photographer, but argues that, here, Durocher did not direct Bosley or create the background for the images, so the Bosley photograph cannot be considered his creative work. Plaintiffs respond that the photograph was a creative work because Durocher had control over the exposure of the film (i.e., shutter speed and flash settings), used his artistic skill to edit the pictures for size, color, and clarity, and chose which images to publish based on the allurement of the subject.

Our Circuit has not yet determined whether photographs are factual or creative in nature. The Ninth Circuit has held that "[p]hotographs that are meant to be viewed by the public for informative and aesthetic purposes . . . are generally creative in nature," *Kelly*, 336 F.3d at 820, while the First Circuit has held that photographs are both factual and creative. *Nunez*, 235 F.3d at 23. We agree that photographs have varying degrees

of creativity. The parties' arguments persuade us that the Bosley photograph possesses a mixed nature of fact and creativity. Consequently, the jury could reasonably find that this factor weighed in slight favor of Plaintiffs or, at the very least, its impact was neutral.

### C.        The Amount and Substantiality of the Use

We next inspect "the amount and substantiality of the portion used in relation to the copyrighted work as a whole" to help us determine whether the use was fair. 17 U.S.C. § 107(3). Defendant argues that because it published only one photograph, rather than the collection of the photographs of Bosley that were posted on *lenshead.com* and copyrighted by Plaintiffs, the third factor weighs in its favor. Defendant's argument is not well taken. Defendant published the entire photograph at issue less minor cropping of the background. *See Brewer*, 749 F.2d at 529. "While wholesale copying does not preclude fair use per se, copying an entire work militates against a finding of fair use." *Kelly*, 336 F.3d at 820 (internal quotation marks omitted).[2]

### D.        Effect of the Use on the Potential Market

Finally, under the fourth factor, we examine "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). This factor is important to our analysis, *Harper & Row*, 471 U.S. at 566, and weighs in the plaintiff's favor if she can "show[] that the purpose or character of the use was commercial." *Nat'l Rifle Ass'n of Am. v. Handgun Control Fed'n*, 15 F.3d 559, 561 (6th Cir. 1994). This is so because "every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984).

---

[2]Other courts have suggested that this factor may be of lesser import where the publication of a photograph is involved, because a photograph's value usually lies only in its full reproduction. *Nunez*, 235 F.3d at 24; *Haberman v. Hustler Magazine, Inc.*, 626 F. Supp. 201, 212 (D. Mass. 1986). Even if we were to agree with this point, it does not shift the balancing test in favor of Defendant, but merely diminishes the extent to which the factor weighs in Plaintiffs' favor.

Defendant's publication of the photograph was commercial; thus, the presumption of unfair exploitation applies. Defendant attempts to rebut the presumption by arguing not that its publication had no effect on the market, but rather that Plaintiffs have no present intention of exploiting the market for the Bosley photograph, so Plaintiffs have not and will not suffer harm. Of course, a copyright owner is not required to show that actual harm has come to her, *Sony Corp.*, 464 U.S. at 451, but must show merely a "potential" effect on the market for the copyrighted work. *Harper & Row*, 471 U.S. at 568–69. We agree with Plaintiffs that their current desire or ability to avail themselves of the market for the Bosley photograph is immaterial to the issue outlined by the statute, namely, whether there is potential for an adverse effect on the market for the photograph should the challenged use become widespread. *Id*. at 568. Plaintiffs presented ample evidence of the vast market for the Bosley photograph, and they persuasively argued that Defendant's publication and sale of the picture "directly competed for a share of the market for" the Bosley photograph. *Id*. The jury would not be unreasonable in finding that this factor weighed in favor of Plaintiffs because Defendant failed to rebut the presumption that its publication of the Bosley photograph affected the market.

In conclusion, we hold that the jury was not unreasonable in weighing the four statutory factors of the fair use defense in Plaintiffs' favor. Thus, the district court did not err in denying Defendant's Rule 50(b) motion for judgment as a matter of law.

## II.    RULE 59 MOTION FOR A NEW TRIAL: COMMENTS BY PLAINTIFFS' COUNSEL

Defendant moved for a new trial, asserting that comments made by Plaintiffs' counsel in its opening statement and closing argument were improper and prejudicial. The district court denied the motion. We review a denial of a Rule 59 motion for a new trial for abuse of discretion. *Tisdale*, 415 F.3d at 528. "An abuse of discretion occurs when the district court has relied on clearly erroneous findings of fact, when it improperly applies the law, or when it uses an erroneous legal standard." *Tahfs v. Proctor*, 316 F.3d 584, 593 (6th Cir. 2003).

"[A] new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon*, 78 F.3d 1041, 1045–46 (6th Cir. 1996). Where a party moves for a new trial based on allegedly improper comments made by counsel, we analyze:

> the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e.g. whether it is a close case), and the verdict itself.

*Mich. First Credit Union v. CUMIS Ins. Soc'y, Inc.*, 641 F.3d 240, 249 (6th Cir. 2011) (quoting *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980)) (internal quotation marks omitted). If we determine that counsel made improper comments, we may set aside the verdict only "if there is a reasonable probability that the verdict of the jury has been influenced by such conduct." *Strickland v. Owens Corning*, 142 F.3d 353, 358 (6th Cir. 1998) (quoting *Peter Kiewit Sons'*, 624 F.2d at 756) (internal alteration and quotation marks omitted). The failure to object to the allegedly prejudicial comments at trial "raise[s] the degree of prejudice which must be demonstrated in order to get a new trial on appeal." *Strickland*, 142 F.3d at 358. Our Court has described the high level of deference that it affords to the trial court in determining whether improper comments prejudiced the jury:

> [W]hether misconduct in a trial of a cause of action is of such a nature that a fair or impartial verdict cannot be reached is in the first instance for the trial court's determination. The trial court is, of necessity, clothed with a great deal of discretion in determining whether an objectionable question is so prejudicial as to require a retrial. The trial court is in a far better position to measure the effect of an improper question on the jury than an appellate court which reviews only the cold record. It is for this reason that this Court has declared that the power to set aside [a] verdict for misconduct of counsel should be sparingly exercised on appeal.

*Peter Kiewit Sons'*, 624 F.2d at 756 (internal citations, quotation marks, and alterations omitted).

On appeal, Defendant points to five types of statements made by Plaintiffs' counsel during trial that it believes were improper and prejudicial. Defendant failed to object to all but one of the statements, so Defendant is subject to a heightened showing of prejudice with respect to the remaining comments. *Strickland*, 142 F.3d at 358.

## A.          Statements Regarding LFP's Wealth

Defendant first argues that Plaintiffs' counsel made improper remarks "hammering" Defendant's wealth and comparing it to Plaintiffs' "modest means." Plaintiffs contend that counsel's comments were limited to permissibly questioning the credibility of Defendant's witnesses, who were all paid by Defendant, or, alternatively, that the comments were not prejudicial.

### 1.          Statements discussing Defendant's law firm

During trial, Defendant called as a witness Feigenbaum, the attorney who advised Defendant that its republication of the Bosley photograph was "fair use" and whose law firm was on retainer to advise Defendant on various matters related to publication. Importantly, the law firm also represented Defendant at trial. Feigenbaum admitted on cross-examination that Defendant's retainer agreement with the law firm amounted to approximately one-and-a-half million dollars per year. Feigenbaum also referred to Defendant as a "substantial client" for the firm. During its closing argument, Plaintiffs' counsel referred to Defendant as the law firm's "$1.5 million client," reiterated that Defendant had a retainer agreement for "a million, five," and stated that Defendant "provides a tremendous amount of revenue" to the law firm. Defendant did not object to those comments. Plaintiffs' counsel then told the jury, without objection: "Maybe whether Mr. Feigenbaum made a mistake is important to their law firm because of the size of the client." Ultimately, the district court did not find these comments improper because they all related to the credibility of Feigenbaum's testimony and the bias of defense counsel. We agree.

Plaintiffs' counsel's comments about Defendant's retainer agreement with Feigenbaum and his law firm, as well as the amount of revenue that the law firm makes

from Defendant, did not enter impermissible areas of discussion. The fact that the witness has an ongoing business relationship with Defendant and is paid by Defendant is relevant to the witness' credibility and bias. Additionally, the fact that the witness gave Defendant the advice on fair use prior to publication of the Bosley photograph means that the witness stands to lose if his advice is deemed incorrect by the jury. This is clearly relevant to the witness' credibility and bias. The comments were therefore permissible.

### 2.        Statements regarding witness earnings and employment

Next, Defendant takes issue with a comment that Plaintiffs' counsel made regarding the earnings of defense expert Howdeshell. Plaintiffs' counsel stated, without objection by the defense, that Howdeshell was "an expert who, over the course of three cases, has earned almost $100,000 in assisting LFP in litigation." This comment was not improper. The fact that Defendant's expert was paid by Defendant and has received consistent employment from Defendant is an inquiry relevant to the expert's credibility. *See* 2-35 Fed. Litig. Guide § 35.41 (Matthew Bender 2012). The facts of Howdeshell's employment and earnings were in evidence, and Plaintiffs' statements were limited to addressing this potential bias.

Defendant also appeals an unobjected-to statement that "[t]he witnesses in this case, Mr. Valcourt, Mr. Johnson, Mr. Hagen, and Mr. David, [are] four employees of LFP who rely upon Larry Flynt for their living." Such a statement is similarly not improper because the witnesses' employment relationship with Defendant is relevant to their credibility and bias.

### 3.        Statements regarding the parties' resources

Finally, Defendant argues that comments of Plaintiffs' counsel impermissibly compared the parties' financial resources. Specifically, Plaintiffs' counsel stated:

> [Defense counsel] said in his opening statement, "What this case is about, ladies and gentlemen, is money." Make no mistake about it, and I agree with him; it is about money. But, not how you would think it's about money. Larry Flynt's company is a tremendously huge, successful

company. They sell Hustler Magazine and countless other magazines and products. Revenue from just the magazine is $1 million. They've got videos, casinos, toys.

Defendant objected, based on lack of evidence. Plaintiffs then said, without objection:

It's easy for [Defendant] to say, "You give us $1, and we're going to appeal this thing. We're going to appeal it until you can't see straight. You are going to spend all your money and all your time." Is that free speech? Is that freedom? No, it's not. It's "might makes right." They publish articles, they publish photographs that have copyright because they can. And then they say, "Come get us, Catherine Bosley. You're a TV reporter. Rick Brown, you put in concrete." People of modest means who have stood up here and said we're not going to let them do that.

These comments were made in response to Defendant's own argument that the case was about money, that Plaintiffs were only out to profit, that Defendant had a right to free speech, and that Defendant would appeal an adverse ruling. Nonetheless, Defendant argues that Plaintiffs' comments amounted to a "pervasive" attempt to compare the parties' resources and an "improper . . . 'appeal to class prejudice and pandering to the perception that corporations wield disparate power.'"

The majority of counsel's discussion was permissible. However, counsel's statement that "Larry's Flynt's company is a tremendously huge, successful company" may be improper, because it is not relevant to the credibility or bias of any witness, and it was unnecessary to use that statement to inform the jury that Defendant pays the law firm a high price for its representation. While counsel's subsequent statement that Plaintiffs are "[p]eople of modest means" is less problematic, it too may have been improper.

Nonetheless, we find that Defendant cannot demonstrate the required level of prejudice. First, the comments were made to rebut Defendant's own allegations that Plaintiffs were money-grubbing and that Defendant would appeal an adverse verdict. Second, the comments were not so egregious as to inflame the jury, and they covered a short time period compared to the length of the trial and closing arguments. The

comments here are similar to or even less prejudicial than comments made in other cases where we did not find prejudice. *See Bridgeport Music, Inc. v. Justin Combs Publ'g* (*Justin Combs*), 507 F.3d 470, 478–79 (6th Cir. 2007) (finding no prejudice in comments that a corporate defendant was a "fancy," "multi-million dollar company" from New York City, while plaintiffs were small-town citizens, and that the jury should "tell the world that what defendants did is not going to happen in Nashville, Tennessee" (internal alterations omitted)), *cert. denied*, 129 S. Ct. 85 (2008); *Strickland*, 142 F.3d at 358–59 (finding that no prejudice arose from a question to the jury: "Do you want to live in a world where [the corporate defendant] makes the rules . . . . You have an opportunity . . . . to tell [the corporate defendant] . . . whether you stand for safe products and decency"); *Eisenhauer v. Burger*, 431 F.2d 833, 837–38 (6th Cir. 1970) (finding no prejudice in comments that a defendant lived in a trailer, his family business was "small and impoverished," and that evidence of his "financial situation" was not admitted). Defendant's attempt to analogize this case to *Igo v. Coachmen Indus., Inc.*, 938 F.2d 650, 653–55 (6th Cir. 1991), and *Pingatore v. Montgomery Ward & Co.*, 419 F.2d 1138, 1142 (6th Cir. 1969), is unsuccessful because the improper comments in those cases were much more egregious, unsubstantiated, and prejudicial than the comments at issue here.

### B.      Statement Regarding Larry Flynt's Non-Appearance in Court

Defendant next points to a remark made during closing argument regarding the absence at trial of LFP owner Larry Flynt, but the presence of Mr. Flynt's daughter, Theresa Flynt. During closing argument, defense counsel averred that Larry Flynt was unable to attend the trial because he was in a wheelchair and could not travel. Plaintiffs' counsel responded:

> I think it's important that Mr. Flynt isn't here. [Counsel for Defendant] suggested do you want him to travel with his wheelchair. That man travels all over the country. Celebrating my father's birthday, I saw him in Michigan. He travels. He could have traveled. He didn't travel for a reason, and I think it's important, ladies and gentlemen, who is their trial representative? Ms. Flynt. She had nothing to do with this magazine at all. She didn't get up and testify, but she is a woman, and

doesn't it make it seem more reasonable if you've got a woman representing your pornographic magazine? That's why Mr. Flynt is not here, ladies and gentlemen.

Defendant failed to object to this statement at trial, but now argues that Plaintiffs' counsel improperly made himself an unsworn witness, discussed evidence not in the record, and induced the jury to believe that Theresa Flynt was a "plant." The district court agreed that Plaintiffs' statement was improper but found no prejudice.

We agree that the statement regarding Mr. Flynt's ability to travel was improper because it did not relate to issues in the trial and because counsel discussed facts not in evidence. However, Defendant is subject to a heightened standard for showing prejudice because it did not object to this statement. *Strickland*, 142 F.3d at 358. Defendant is incapable of showing this high level of prejudice, because the comment was short given the length and extent of closing arguments, and the district court cured the error by instructing the jury that arguments of counsel are not evidence. *See Peter Kiewit Sons'*, 624 F.2d at 756.

### C.    Statement Regarding Deterrence

Defendant next argues that Plaintiffs' counsel improperly persuaded the jury that it should punish Defendant in order to avoid similar future bad conduct by increasing its award. During closing argument, Plaintiffs' counsel stated, without objection by Defendant:

> [Bosley] told you the law allows us to get money, and yes, we're asking for money. There's no question about it. But, the law permits us to do that because part of the statute [defense counsel] didn't tell you about is a deterrent effect. A deterrent to deter people from violating others' copyrights.

Plaintiffs argue that this statement was proper because the copyright statute has a purpose to deter infringement and because defense counsel had just explained the other purposes of the statute except for deterrence. The district court felt that any error was cured by the jury instructions and noted that the jury was not actually prejudiced because the award was much lower than that requested.

It was likely improper for Plaintiffs' counsel to mention "deterrence," given that punitive damages were not at issue in the trial. Counsel's comment that Plaintiffs were asking for money, followed by using the word "deterrence" three times, could be construed as an attempt to entice the jury to punish Defendant with a high award. Nonetheless, Defendant has not shown that Plaintiffs' comment about deterrence influenced the jury. Similar to this case is *Strickland*, where a plaintiff implicitly argued that the jury should stand up to the corporate defendant, which the defense construed as a request for punishment or punitive damages. 142 F.3d at 358. The court found no prejudice on that basis because:

> Plaintiff's counsel did not directly ask the jury to award punitive damages, nor did he ask the jury to base its award on non-compensatory factors such as Defendant's net worth or income. Moreover, the jury's total damage award of $ 1,767,462, consisting primarily of $ 1,500,000 for [the plaintiff's] pain and suffering, is not so large as to indicate that the jury intended to punish Defendant.

*Id.* at 359. Here, counsel's comment was brief and did not directly request punitive damages. The jury was never explicitly asked to base its award on non-compensatory factors and indeed was instructed to base the award only on actual damages and profits. Importantly, the jury's total award was even less than the actual damages and profits that Plaintiffs had calculated for them, indicating that the award was not increased to accommodate a punitive effect. *See id.* Thus, the comment was not so prejudicial as to require a new trial.

### D.    Reference to Bosley as Role Model

Defendant also finds improper a statement in closing argument that Bosley is a "role model." Plaintiffs argue that the comment was made only after defense counsel "spent a significant amount of time during his closing argument attempting to degrade Bosley's character and motives." Plaintiffs' counsel remarked:

> I have a daughter, who's the most important thing in my life, and I tell her it's okay to make mistakes. Nobody is perfect. Stand up for what you believe in and don't give up. That's what I tell her. Catherine Bosley, you made a mistake. You took your clothes off. Okay. You

can't take that back. But, if my daughter turns out like Catherine Bosley, if she is able to live up to that role model of not giving up and sticking up for what she believes in, I will be one proud father.

The district court found the comment to be improper but not prejudicial. We agree.

Looking to the totality of the circumstances, counsel's comment that Bosley is a role model for his daughter was brief and did not impermissibly characterize any of the relevant facts or legal theories. It was tempered by the district court's instruction that the jury decide the case without regard to bias, prejudice, sympathy, or public opinion. *See Peter Kiewit Sons'*, 624 F.2d at 756. We find no abuse of the district court's discretion in determining that Defendant has not shown the high level of prejudice necessary to overturn the jury's verdict based on this statement.

### E.      Statement that LFP Conceded Copyright Infringement

Finally, Defendant takes issue with statements made by Plaintiffs' counsel during an exchange within Plaintiffs' counsel's opening remarks:

> [Plaintiffs' Counsel]: It is undisputed that Catherine and Rick owned the photograph LFP published. It is undisputed at the time the photograph was published, it was protected by a copyright. It is undisputed that LFP did not seek or obtain permission from Ms. Bosley or Mr. Brown to publish that photograph. . . . You will hear from the law that what we have stipulated to or proven is that there was a copyright infringement. The issue becomes whether—
>
> [Defense Counsel]: Judge, I object to that. I have to object to that.
>
> [The Court]: Okay. To the word infringement?
>
> [Defense Counsel]: Your Honor, he said we stipulated to copyright infringement.
>
> [Plaintiffs' Counsel]: I did not say that.
>
> [The Court]: Okay. Why don't you—why don't you clarify because I think everybody is in agreement about the case. So—
>
> [Plaintiffs' Counsel]: You will see from the law, based upon the stipulations that we have, that there is an infringement of Catherine Bosley and Rick Brown's copyright. There's also an affirmative defense, as the Judge described to you, and that's the defense that the Defendant

is putting on saying we were allowed to publish it even though it was copyrighted and even though you didn't give us your permission because of the doctrine of fair use.

Defendant contends that Plaintiffs lied to the jury by stating that Defendant stipulated to the issue at trial, namely, whether there was liability for copyright infringement, and that the trial court made the improper remark even more prejudicial by allowing Plaintiffs to repeat their statement.

We do not find anything improper or erroneous in counsel's statements. Plaintiffs' counsel first stated that the jury "will hear" during trial that the elements of copyright infringement "have [been] stipulated to *or* proven," at which point he was interrupted (emphasis added). His second comment clarified that Plaintiffs will be able to use the stipulations at hand to prove the elements of copyright infringement by Defendant, but that Defendant was asserting an affirmative defense to the copyright infringement that would preclude liability. Nothing was improper in this explanation. Furthermore, the issue of the stipulations and the affirmative defense was frequently explained throughout the trial by both parties, the judge, and the jury instructions. The jury was repeatedly informed that, although the parties stipulated to the facts necessary to prove the two elements of a direct copyright infringement claim, the fair use doctrine raised by Defendant is a complete bar to copyright infringement liability. Consequently, there was neither error nor prejudice stemming from Plaintiffs' comment.

In conclusion, the district court did not abuse its discretion in determining that none of the contested comments of Plaintiffs' counsel warrant a new trial.

## III.    RULE 59 MOTION FOR A NEW TRIAL: PROFITS

Defendant asserts that the district court abused its discretion in denying its Rule 59 motion for a new trial on the alternative basis that Plaintiffs failed to meet their burden of showing an entitlement to profits and that the award of profits was excessive. The pertinent statute on proving actual damages and profits for a direct copyright infringement is 17 U.S.C. § 504(b), which provides:

The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b).[3] The jury was instructed on the burden of proof using the statutory language.

### A.     Burden of Proof

As an initial matter, we outline the burden of proof on each party in proving profits under the statute. Section 504(b) unambiguously provides that the burden on the copyright owner is "to present proof only of the infringer's gross revenue" of the infringing product, while the infringer must show not only "expenses" but also the amount of the "profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b); H.R. Rep. No. 94-1476, at 161 (1976) ("[T]he burden of proof is on the defendant in these cases; in establishing profits the plaintiff need prove only 'the infringer's gross revenue,' and the defendant must prove not only 'his or her deductible expenses' but also 'the element of profit attributable to factors other than the copyrighted work.'"). Many other Circuits have determined that a copyright owner's burden of proving gross revenue requires that he or she demonstrate some sort of relationship between the infringement and the gross revenue. *See Thornton v. J. Jargon Co.*, 580 F. Supp. 2d 1261, 1279–80 (M.D. Fla. 2008). The circuits place varying labels on the requirement that plaintiffs show evidence of a "reasonable relationship," "nexus," "connection," "causal link," etc. *See William A. Graham Co. v. Haughey*, 646 F.3d 138, 141 (3d Cir. 2011) (requiring that plaintiffs show "gross revenue" and a "causal nexus"), *cert. denied*, 132 S. Ct. 456 (2011); *Quantum Sys. Integrators, Inc. v. Sprint Nextel Corp.*, 338 F. App'x 329, 333 (4th Cir. 2009) ("[W]e have held that any profits awarded

---

[3]Section 504(b) governs recovery for a copyright owner's actual damages and for recoverable profits. The primary issue here is the recoverable profits. Section 504(c) also authorizes statutory damages, which Plaintiffs did not seek.

as damages for copyright infringement must be 'reasonably related to the infringement.' A copyright owner has the burden of demonstrating some causal link between the infringement and the particular profit stream before the burden-shifting provisions of § 504(b) apply." (citing *Bonner v. Dawson*, 404 F.3d 290, 294 (4th Cir. 2005))(internal quotation marks omitted)); *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 796 (8th Cir. 2003) (holding that the plaintiff must demonstrate a "nexus" between the infringement and profits, but asserting that this burden should not be confused with the defendant's burden of "apportioning profits between various factors contributing to the profits"); *Davis v. Gap*, 246 F.3d 152, 160 (2d Cir. 2001) ("It is true that a highly literal interpretation of the statute would favor [the plaintiff by requiring it to] 'present proof only of the infringer's gross revenue,' leaving it to the infringer to prove what portions of its revenue are not attributable to the infringement. Nonetheless, we think the term 'gross revenue' under the statute means gross revenue reasonably related to the infringement, not unrelated revenues." (internal citation omitted)); *Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1375 (Fed. Cir. 1999) (holding that the plaintiff has the burden to show a "connection" between the infringement and revenue before the burden shifts to the defendant); *Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983) (holding that, where a defendant individually sold multiple maps including one of the plaintiff's copyrighted maps, it was "not enough" for plaintiff to show the gross revenue from sale of *all* of the maps, rather than the revenue from the sale of only the infringing maps).

Our Circuit has not yet had an opportunity to consider this issue, though several of our cases have discussed the burden on the parties, generally. *See Justin Combs*, 507 F.3d at 483; *Thoroughbred Software Int'l, Inc. v. Dice Corp*, 488 F.3d 352, 360–61 (6th Cir. 2007); *Johnson v. Jones*, 149 F.3d 494, 506–07 (6th Cir. 1998). We must now decide that question.

The only statutory requirement on a copyright owner is proving gross revenue, which is presumed to be the infringer's profits until the infringer proves otherwise. Defendant, however, contends that Plaintiffs in this case have the burden of proving

which portion of the profits are "attributable to" the Bosley photograph versus other photographs or material within the magazine.[4]  This argument misinterprets the plain language of § 504.  The phrase "attributable to" appears twice in the statute:  First, the statute provides that a copyright owner is "entitled" to recover only those profits that are "attributable to" the infringement of its copyrighted material.  The final sentence of the statute explains that the burden of proving which portions of that gross revenue are "attributable to" or not attributable to the infringement is on the infringer—not the copyright owner.  "Where there is a commingling of gains, [the defendant] must abide the consequences, unless he can make a separation of the profits so as to assure to the injured party all that justly belongs to him."  *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 406 (1940); *see Andreas*, 336 F.3d at 796 (holding that "[a]ny doubt as to the computation of costs or profits is to be resolved in favor of the plaintiff.  If the infringing defendant does not meet its burden of proving costs, the gross figure stands as the defendant's profits." (citing *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 514 (9th Cir. 1985)) (internal quotation marks omitted)).

Some courts have imprecisely utilized the first "attributable to" phrase in the statute to describe a copyright owner's burden of proving gross revenue.[5]  However, reading the explanations in these cases in context, it is clear that the courts are interpreting "attributable to" to mean different things with respect to each party.  *See Andreas*, 336 F.3d at 796 (describing the confusion on the parties' burdens under § 504

---

[4]Defendant's attempt to categorize this case as an indirect profits case, which it alleges increases the Plaintiffs' burden of proof, is misplaced.  First, it does not appear that a plaintiff has a higher burden of proof in an indirect profits case compared with a direct profits case.  *See Andreas*, 336 F.3d at 796 ("We agree that in an indirect profits case the profits 'attributable' to the infringement are more difficult to quantify.  But that difficulty does not change the burden of proof established by the statute.").  In any event, Defendant's profits from the Bosley photograph are clearly direct, and not indirect.  *Id.* (explaining that indirect profits arise where "the infringers did not sell the copyrighted work, but used the copyrighted work to sell another product").

[5]Our decision in *Thoroughbred* similarly imprecisely utilized the "attributable to" language when outlining the copyright owner's burden, likely due to the reasons described *infra*.  In any event, in that case the copyright owner was unable to present *any* nonspeculative gross revenue number, so the discussion of its burden beyond that stage was *dicta*.  Moreover, even if *Thoroughbred* had attempted to shift the infringer's statutory burden onto the copyright owner, *stare decisis* would require that we reject its novel interpretation, which is inconsistent with its predecessor, *Johnson*, and contrary to the plain language of the statute.  *See, e.g.*, *Salmi v. Sec'y of Health & Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985); 6th Cir. R. 206(c); *see also Justin Combs*, 507 F.3d at 483 (issued after *Thoroughbred* but following *Johnson* and requiring the defendant to prove the "attributable to" element as outlined by statute).

due to courts' use of inexact language).  To the extent the phrase "attributable to" is applicable to the copyright owner's burden (though we believe that phrase should not be used in reference to the copyright owner's burden in order to prevent confusion), it simply means that the gross revenue number that the copyright owner presents must have a reasonable relationship to the infringing activity.  When applied to the infringer as outlined in the statute, however, "attributable to" means apportionment.  *See* H.R. Rep. No. 94-1476, at 161.  Thus, despite courts' imprecise use of the phrase "attributable to," it has been and remains the defendant's burden to apportion the profits among its costs and other elements that gave rise to its profits, proving causally why certain profits are or are not attributable to the defendant's infringement of the plaintiff's copyrighted material.

Based on the plain language of the statute, we therefore reject Defendant's contention that it is Plaintiffs' burden to prove that Defendant profited from the Bosley photograph, or to prove which portions of *Hustler*'s profit, if any, are attributable to the Bosley photograph.  Plaintiffs have only one requirement: to prove Defendant's gross revenue.  We agree with our sister Circuits in holding that this gross revenue number must have a reasonable relationship—relevance, in other words—to the infringing activity.[6]  By requiring that the gross revenue number put forth by the copyright owner has a reasonable relationship to the infringing activity, we do not raise the burden on copyright owners beyond that outlined by the plain language of the statute.  It is merely an implicit, common-sense element of proving gross revenue.  *See, e.g.*, *Thornton*, 580 F. Supp. 2d at 1280 ("At the summary judgment stage, Plaintiff must introduce non-speculative evidence of this [reasonable] relationship, consistent with general damages principles," and "[t]his burden is supported by the policy of the statute.").[7]  Thus, the

---

[6]We emphasize that we do not impose the more stringent burden of proving a "causal connection" on copyright owners, to the extent that such a label indicates a burden higher than the one outlined above. *See Thornton*, 580 F. Supp. 2d at 1280. We fear that utilizing terms of causation will create continued confusion as to whether the defendant retains the burden to prove which portions of its profits are "attributable to" the infringement in terms of the apportionment of profits.  17 U.S.C. § 504(b).

[7]Our invocation of the "reasonable relationship" language will not likely impact the way that copyright cases are actually tried, as it is rarely the case that a plaintiff would present a gross revenue number without suggesting why that number is related to the infringement.

jury instructions issued below, which contained only the language of the statute, were accurate.

### B.     Whether Plaintiffs Met Their Statutory Burden

We now turn to the issue raised by Defendant: whether Plaintiffs met their burden under § 504(b). We find that they have. Defendant admitted that the gross revenue for its February 2006 issue of *Hustler* was $1,148,000. The relationship of the infringement to that gross revenue number was demonstrated by the parties' stipulation that the Bosley photograph was published in the February 2006 issue. This evidence was all that was required of Plaintiffs under the statute. *See Davis*, 246 F.3d at 160 (explaining that where a copyrighted poem is contained within an anthology of poetry, the copyright owner's burden would be simply to show the gross revenue from the anthology that the poem is contained within, but noting that the plaintiff could not meet its burden by showing the gross revenue from the infringer's "publication of hundreds of titles, including trade books, textbooks, cookbooks, etc."); *Taylor*, 712 F.2d at 1122 (see map example discussed *supra*).

The burden then shifted to Defendant, who ardently argued that *none* of its profits were attributable to the Bosley photograph. Defendant reasoned that 99% of its magazines are sold in shrink wrap, so no customer would know that the Bosley photograph was featured in the magazine and, hence, no customer would have purchased the magazine "because of" that photograph. In a similar vein, Defendant contended that there was no mention of the Bosley photograph on the cover of the magazine or in the Table of Contents (although the "Hot News Babes" contest itself was listed in the Table of Contents). Defendant also called its expert Howdeshell, who theorized that none of the profits were attributable to the Bosley photograph, except for possibly a licensing fee that Defendant would have otherwise paid Plaintiffs for use of the Bosley photograph, which Howdeshell estimated to be about $200.

However, the jury was entitled to reject Defendant's theory. We have previously noted that where, as here, "the jury simply returned a numerical amount for damages, and did not specify how it calculated damages, there is no way of knowing the jury's

reasons for rejecting defendants' arguments," so we must decide whether there was any rational basis for the jury to discount Defendant's arguments. *Justin Combs*, 507 F.3d at 484. The jury was not unreasonable in rejecting the extreme and unconvincing argument that nothing in the magazine other than the photograph on the magazine's cover or perhaps pictures in the table of contents can be the source of profits for the magazine. And Defendant provided no authority holding that profits are "attributable to" a copyrighted work only if a consumer purchased the defendant's goods "because of" the copyrighted work. Nonetheless, the jury probably did credit Defendant's arguments related to apportionment in part, because its award was lower than the profit calculation by Plaintiffs. There was no abuse of discretion in rejecting Defendant's theory that Plaintiffs failed to meet their burden under the statute.

### C.        Amount of Profits

The district court similarly did not abuse its discretion in upholding the amount of profits awarded Plaintiffs by the jury. "[A] verdict is not excessive unless it clearly exceeds the maximum that a jury could reasonably find to be compensatory for the plaintiff's loss." *Cotter v. Christus Gardens, Inc.*, No. 99-5996, 2000 U.S. App. LEXIS 33473, at *8 (6th Cir. Dec. 12, 2000) (citing *Roush v. KFC Nat'l Mgmt. Co.*, 10 F.3d 392, 397 (6th Cir. 1993); *Brewer*, 749 F.2d at 529). "Unless the award is (1) beyond the range supportable by proof or (2) so excessive as to shock the conscience, or (3) the result of a mistake, we must let the award stand." *Cotter*, 2000 U.S. App. LEXIS 33473, at *8–9 (citing *Leila Hosp. & Health Ctr. v. Xonics Med. Sys., Inc.*, 948 F.2d 271, 278 (6th Cir. 1991)). The jury found that Plaintiffs were owed only $135,000, or 8.5% percent of the over one-million dollars that Defendant made from the February 2006 issue of *Hustler*. This amount does not clearly exceed the maximum or shock the conscience, so it must be left intact.

## IV.    CROSS-MOTIONS FOR ATTORNEY'S FEES

Following the jury verdict, both Plaintiffs and Defendant moved for attorney's fees. Defendant requested fees on the assumption that it was the overall prevailing party

since the district court had dismissed six of the seven claims against it prior to trial. Plaintiffs considered themselves the prevailing party because the jury decided in their favor on the sole claim brought to trial. The district court granted Plaintiffs $133,812.51 in attorney's fees, but denied Defendant's request for fees. We review a district court's decision to award attorney's fees under the copyright act for an abuse of discretion. *Thoroughbred*, 488 F.3d at 358. However, we review *de novo* the legal question of which party is the prevailing party. *Bridgeport Music, Inc. v. London Music, U.K.*, 226 F. App'x 491, 493 (6th Cir. 2007) (citing *Bailey v. Mississippi*, 407 F.3d 684, 687 (5th Cir. 2005)).

### A.      Prevailing Party

We must first determine *de novo* whether Plaintiffs, Defendant, both, or neither were a "prevailing party" in the case below. Plaintiffs' Complaint involved three federal Copyright Act claims and four Ohio law claims. There is no question that Plaintiffs were the prevailing party on their direct copyright infringement claim (count one), which was submitted to the jury and resulted in a verdict in Plaintiffs' favor. Similarly, it is clear that Defendant was the prevailing party on the four Ohio law claims (counts four, five, six, and seven), because those claims were adjudicated in Defendant's favor under Rules 12(b)(6) or 56. *See, e.g.*, *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't Health & Hum. Res.*, 532 U.S. 598, 603 (2001).

The parties dispute which of them—if any—is the prevailing party on counts two and three for contributory and vicarious copyright infringement. We find that neither party prevailed on these claims. The parties jointly and voluntarily stipulated to dismissal of these two claims, and the district court permitted that stipulation without imposing prejudice. *See* Fed. R. Civ. P. 41(a) (explaining that a voluntary stipulation of dismissal signed by all parties and filed by the plaintiff is presumed to be "without prejudice" unless the notice or stipulation states otherwise). Under these circumstances, the district court made no judicial determination as to a legal change in the relationship of the parties but merely recognized the parties' own mutual decision to remove those claims from the district court's consideration. *See Chambers v. Time Warner, Inc.*,

279 F. Supp. 2d 362, 365–66 (S.D.N.Y. 2003); *see also Maker's Mark Distillery v. Diageo N. Am., Inc.*, 679 F.3d 410, 425 (6th Cir. 2012) (quoting *Buckhannon*, 532 U.S. at 603, 605); *Cadkin v. Loose*, 569 F.3d 1142, 1149 (9th Cir. 2009), *cert. denied*, 130 S. Ct. 1895 (2010); *RFR Indus., Inc. v. Century Steps, Inc.*, 477 F.3d 1348, 1353 (Fed. Cir. 2007).

Defendant invites this Court to decide that it is the "overall" prevailing party—and thus was the only party entitled to fees—simply based on the number of claims that it successfully defended. The Supreme Court has long rejected this position, explaining that "the degree of [a party's] success does not affect eligibility for a fee award," but only goes to the reasonableness of the amount of that award. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (citing *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790, 793 (1989)) (internal alterations and quotations omitted). Alternatively, Defendant suggests that it should receive at least "four sevenths (57.1%)" of the fees for the entire action because it was successful on four of Plaintiffs' original seven claims. *See id.* Defendant then contends that it is entitled to attorney's fees under the Copyright Act, state law, or Federal Rule of Civil Procedure 54(d). Of course, because we find that Defendant prevailed on only Plaintiffs' state law claims, it may only recover fees to the extent permissible under state law, and not under the Copyright Act.[8] *See Thoroughbred*, 488 F.3d at 362 (noting that success on non-copyright claims "do[es] not bear on who prevailed under the Copyright Act" for the purpose of

---

[8] Cases permitting a party to recover attorney's fees under the Copyright Act for related pendent state law claims all presuppose that the moving party actually prevailed on at least one federal copyright claim, which is not the case here. *E.g.*, *Skokos v. Rhoades*, 440 F.3d 957, 962 (8th Cir. 2006) (holding that a party "who loses on the merits of his federal claims is not a 'prevailing party' for [42 U.S.C.] § 1988 purposes, just because he prevails on a related pendent state-law claim"); *NOW v. Operation Rescue*, 37 F.3d 646, 653 (D.C. Cir. 1994) (holding that "[a]n award of attorneys' fees may properly extend to related pendent state law claims *if the party also prevails on its federal . . . claim*" (emphasis added)); *see InvesSys, Inc. v. McGraw-Hill Cos., Ltd.*, 369 F.3d 16, 20 (1st Cir. 2004) (fees permitted where adjudication of the non-copyright claim was necessary to the disposition of the copyright action); *Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 834 (9th Cir. 2003) (fees permitted where copyright and non-copyright claims are "related"); *Entm't Research Grp. v. Genesis Creative Grp.*, 122 F.3d 1211, 1230 (9th Cir. 1997) (holding that fees are not available where the mixed claims "involved completely different legal theories and questions"); *see also Smith v. Robinson*, 468 U.S. 992, 1006 (1984) (holding that "fees are not properly awarded for work done on a claim on which a plaintiff did not prevail and which involved distinctly different facts and legal theories from the claims on the basis of which relief was awarded" (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434–35, 440 (1983); *Blum v. Stenson*, 465 U.S. 886 (1984))).

determining attorney's fees).  Instead, we consider each prevailing party's entitlement to fees under the claims they prevailed upon.

### B.          Plaintiffs' Attorney's Fees under the Copyright Act

The Copyright Act permits an award of "reasonable attorney's fees to the prevailing party" in a copyright infringement case.  17 U.S.C. § 505; *Thoroughbred*, 488 F.3d at 361; Fed. R. Civ. P. 54(d)(2)(B)(ii).  "The grant of fees and costs 'is the rule rather than the exception and they should be awarded routinely.'"  *Bridgeport Music, Inc. v. WB Music Corp.* (*WB Music II*), 520 F.3d 588, 592 (6th Cir. 2008) (quoting *Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 380 (5th Cir. 2004)) (internal alteration omitted).  However, the decision to grant attorney's fees remains within the trial court's discretion.  17 U.S.C. § 505; *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994).  Thus, we must decide whether the district court abused its discretion in awarding fees to Plaintiffs on their successful direct copyright infringement claim.

We utilize "four non-exclusive factors to determine whether to award attorney's fees in a copyright action."  *Thoroughbred*, 488 F.3d at 361 (citing *Coles v. Wonder*, 283 F.3d 798, 804 (6th Cir. 2002); *Fogerty*, 510 U.S. at 534 n.19).  These four factors include: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case)[,] and the need in particular circumstances to advance considerations of compensation and deterrence."  *WB Music II*, 520 F.3d at 588.  These factors may be "used to guide courts' discretion, so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner."  *Fogerty*, 510 U.S. at 534 n.19.  The district court applied this analysis and found (1) that Defendant's fair use defense was *not* frivolous; (2) that Defendant's motivation in publishing the Bosley photograph was improper in that it sought to profit from the picture; (3) that Defendant's fair use defense was reasonable and appropriate; and (4) that deterrence was important in this case where Defendant "did not undertake an extensive investigation to determine whether the material was copyrighted when it appears that it should have."  The district court ultimately balanced

the factors in Plaintiffs' favor and awarded Plaintiffs fees for the portion of services that it determined was attributable to litigating the direct copyright claim: $112,509, or 40% of Plaintiffs' total fees, plus $21,303.51 in costs.

In its opening appellate brief, Defendant failed to analyze the case under the four-factor *Fogerty* test. Instead, it discussed only why the district court *correctly* decided that its invocation of the fair use doctrine was not frivolous under the first factor and why Plaintiffs' other claims were threadbare (which is not a relevant inquiry under the four-factor test). Although Defendant does discuss the remaining factors in its reply brief, that discussion is minimal. *United States v. Perkins*, 994 F.2d 1184, 1191 (6th Cir. 1993) ("Issues raised for the first time in a reply brief are not properly before this court."). Defendant has not shown or even properly alleged that the district court abused its discretion by relying on clearly erroneous facts, improperly applying the law, or using an erroneous legal standard. *See Tahfs*, 316 F.3d at 593. Furthermore, although Defendant initially noted on appeal that it also disputed the allegedly excessive amount of the fee award, Defendant has also abandoned that argument by failing to explain it. We therefore affirm the award of fees.

## C.      Defendant's Attorney's Fees under State Law

Because Defendant prevailed on all four of Plaintiffs' state law claims by successfully achieving dismissal or summary judgment, we look to whether state law authorizes attorney's fees on those claims. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 260 (1975). Defendant admits that Ohio law does not authorize attorney's fees for counts four (violation of Ohio common law right to privacy) and seven (respondeat superior). Thus, Defendant is possibly entitled to fees on only the right to publicity claim, under ORC § 2741.07(D)(1), and the ODTPA claim, under ORC § 4165.03(B).

The district court determined that Defendant was not entitled to fees on the two remaining claims because it believed that Plaintiffs filed both claims in good faith, given that they relied on the same facts to support those claims as they did to support their successful direct copyright infringement claim. Moreover, the ODTPA specifically

permits an award of fees to a defendant only where a plaintiff filed its ODTPA claim knowing it to be groundless, which the district court did not find to be so in this case. ORC § 4165.03(B). Defendant does not point to any reason, such as the district court's improper application of law or reliance on erroneous facts or legal standards, to support its argument. Instead, Defendant inaccurately complains that because it was the prevailing party on the state claims, it was automatically entitled to fees. Because Defendant presents no compelling or reasoned argument as to why the district court might have abused its discretion, we affirm the denial of Defendant's motion for attorney's fees.

## CONCLUSION

For the reasons discussed above, we **AFFIRM** the district court's orders.